In re W.L. JACKSON MANUFACTUR-
ING COMPANY, Debtor.

C. Kenneth STILL, Trustee, Plaintiff,

v.

UNITED PIPE AND SUPPLY CO.,
INC., Defendant.

Bankruptcy No. 1–81–01952.
Adv. No. 1–82–0532.

United States Bankruptcy Court,
E.D. Tennessee.

June 7, 1985.

Gary R. Patrick, Patrick, Beard, and Samples, Chattanooga, Tenn., for plaintiff.

Thomas S. Kale, Spears, Moore, Rebman and Williams, Chattanooga, Tenn., Fritz A. Batson, Husk, Gleaves, Swearingen, Larsen & Potter, Eugene, Or., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

W.L. Jackson Company (Jackson) was a manufacturer of water heaters and water pump tanks. It filed a petition for reorganization under chapter 11 of the Bankruptcy Code and continued in business as debtor-in-possession. While Jackson was operating as debtor-in-possession, it sold water pump tanks to the defendant, United Pipe and Supply Co., Inc. (United Pipe). When United Pipe failed to pay for the tanks, Jackson brought this action to collect the debt. Subsequently, C. Kenneth Still was appointed trustee in bankruptcy and replaced Jackson as plaintiff in this action. Jackson's case was converted from reorganization under chapter 11 to liquidation under chapter 7.

Before Jackson filed its chapter 11 petition, United Pipe had regularly honored the claims of its customers under Jackson's warranty and had been reimbursed by Jackson. In the 90 days before Jackson filed its bankruptcy petition, it reimbursed United Pipe on a number of warranty claims but still owed United Pipe on other claims.

During Jackson's chapter 11 United Pipe continued to honor warranty claims and seek reimbursement from Jackson, but it

was not reimbursed before Jackson's case converted to chapter 7.

The trustee seeks to recover the full purchase price of the tanks United Pipe bought from Jackson during the chapter 11 and he also alleges that Jackson's reimbursement of United Pipe in the 90 days before filing of the chapter 11 petition was a preferential transfer that he can recover.

United Pipe contends that it is entitled to set off or recoup its reimbursement claims by reducing its debt for the water tanks. United Pipe also denies that the reimbursement in the 90 days before Jackson's filing was a preference.

The parties stipulated the following facts.

Jackson filed its chapter 11 petition on October 5, 1981.

Jackson sold water pump tanks to United Pipe at various times from March 12, 1982 through June 14, 1982. The sales were on "open account". The unpaid balance of the account is $43,272.92.

Jackson's chapter 11 case was converted to a chapter 7 liquidation case on March 3, 1983.

United Pipe has submitted certain warranty claims to Jackson with respect to tanks it bought from Jackson. Jackson has not honored the claims.

Jackson and United Pipe had an established warranty claims procedure that was followed over the entire course of their dealings, which began long before Jackson's chapter 11 petition and continued afterward. A distributor, such as United Pipe, was required to inspect an allegedly defective tank. As proof that the inspection was done, the distributor was required to remove the serial number tag from the tank and attach it to the "returned goods"

form that was used to document warranty claims against Jackson.

Some of the warranty claims in question include the serial number tags. Other claims do not show that the tag was included.

The stipulation actually says that the tanks are subcategorized by date of manufacture as determined from the serial numbers. The chart, however, says date of sale. The date of manufacture does not appear to be relevant but the date of sale may be. The court believes that the parties agreed to treat the date of manufacture as the date of sale or the stipulation inaccurately describes the chart, which correctly categorizes the tanks by date of sale.

During the 90 day period immediately before the date of filing of Jackson's chapter 11 petition, Jackson honored warranty claims presented by United Pipe. Jackson did so by granting United Pipe credits against its debt to Jackson on the open account. The credits totaled $11,299.32. Out of this amount, $3,828.63 was credited within 45 days after United Pipe satisfied the customer's warranty claims. All of the tanks were sold at least 45 days before failure. The parties after diligent effort were unable to determine the exact dates of failure.

The stipulation as to how United Pipe's account was credited in the 90 days before the Chapter 11 began may not be exactly correct. Rather than crediting United Pipe's account, Jackson apparently delivered additional tanks to United Pipe without charge. This appears from the agreed amendments to the complaint and answer, which were submitted after the stipulation. The amendments are as follows:

The warranty claims are categorized in the following chart.

Summary of Warranty Claims Presented

I.
Claims Presented Before Chapter 11
(Before 10–5–1981)

| | With Tags | Without Tags | Total |
| --- | --- | --- | --- |
| Tanks Sold Before Chapter 11 | –0– | $ 575.47 | $ 575.47 |

## II.
### Claims Presented During Chapter 11
### (on or after 10–5–1981 and before 3–3–1983)

| | With Tags | Without Tags | Total |
|---|---|---|---|
| Tanks Sold Before Chapter 11 | $50,216.42 | $ 2,226.75 | $52,443.17 |
| Tanks Sold During Chapter 11 | $ 3,939.63 | $ 177.65 | $ 4,117.28 |
| | $54,156.05 | $ 2,404.40 | $56,560.45 |

## III.
### Claims Presented After Conversion to Chapter 7
### (on or after 3–3–1983)

| | With Tags | Without Tags | Total |
|---|---|---|---|
| Tanks Sold Before Chapter 11 | $16,873.23 | $ 177.65 | $17,050.88 |
| Tanks Sold During Chapter 11 | $ 754.30 | –0– | $ 754.30 |
| | $17,627.53 | $ 177.65 | $17,805.18 |

The Complaint ... is amended to allege that the Defendant ... received preferences avoidable under Section 547 of the Bankruptcy Code as a result of transfers ... to Defendant, without charge, of water pump tanks having a value of $11,299.32 for or on account of antecedent debts owed by Debtor to Defendant, which transfers occurred while Debtor was insolvent and were made on or within 90 days before the date of filing of the petition and that such transfers enabled Defendant to receive more than Defendant would have received if the case were a case under Chapter 7, the transfers had not been made, and Defendant received payment on such warranty claims to the extent provided under the Bankruptcy Code. Said Complaint is further amended to demand of Defendant payment of such alleged preferential transfers in the sum of $11,-299.32.

The Answer filed by the Defendant ... is amended to admit that Defendant received from Debtor while Debtor was insolvent transfers of water pump tanks having a value of $11,299.32 during the 90 days immediately preceding October 5, 1981, the date the chapter 11 petition was filed by Debtor, but to otherwise deny that the transfers of such water pump tanks constituted a preference avoidable under Section 547 of the Bankruptcy Code.

### Discussion

The trustee argued that each of United Pipe's claims is a breach of warranty claim that arose when United Pipe bought the defective water tank. The stipulated facts do not support the trustee's argument.

United Pipe honored its customers' claims as claims against Jackson, under Jackson's warranty, for which Jackson would reimburse it, provided it submitted the proper forms and the serial number tags. The serial number tags were not required as proof that Jackson had breached a warranty to United Pipe but only as proof that United Pipe had honored a claim

against Jackson. United Pipe's claims are not claims for breach of a warranty Jackson made to it. Instead, they are claims for reimbursement for having honored claims against Jackson under its warranty directly to United Pipe's customers.

■ United Pipe and Jackson had a long-standing course of dealing as to United Pipe's handling of warranty claims, but the record does not show that United Pipe had promised to honor such claims in return for Jackson's promise of reimbursement. In contract law terminology, there was no bilateral contract. A. Corbin, *Corbin on Contracts* § 21 (one vol. ed. 1952); 17 Am.Jur.2d, *Contracts* §§ 5 & 12 (1965). Jackson's promise of reimbursement was, however, an offer to make a unilateral contract and was not revoked by filing of the chapter 11 petition or by express revocation. *Hutchinson v. Dobson-Bainbridge Realty Co.*, 31 Tenn.App. 490, 217 S.W.2d 6 (1949). See also *Hoover Motor Express Co. v. Clements Paper Co.*, 193 Tenn. 6, 241 S.W.2d 851 (1951). Jackson apparently allowed the offer to stand after filing its chapter 11 petition as a necessary part of its sales program, as an inducement to potential customers and to established customers. United Pipe continued in the ordinary course of business to honor claims against Jackson in reliance on Jackson's offer of reimbursement.

■ Each time United Pipe honored a claim under Jackson's warranty, a postpetition unilateral contract arose under which it had a claim against Jackson. United Pipe's claim arose when it honored a customer's claim and not before. The existence of the claim was not postponed by the requirement that United Pipe present the proper form and the serial number tag to Jackson. The claim came into existence with the contract, though the contract conditioned payment on presentment of the serial number tag.

■ This eliminates from consideration all claims that do not include the serial number tags since they are not enforceable against Jackson.

■ This also excludes any claims based on United Pipe's having honored warranty claims after conversion of Jackson's case to chapter 7, if there are any such claims. After conversion, Jackson's offer of reimbursement could no longer be treated as in effect. If United Pipe honored claims postconversion, it must be viewed as having done so for its own benefit.

All the claims honored by United Pipe prepetition gave it prepetition claims.

■ The prepetition claims cannot be set off against United Pipe's postpetition debt. There is a long-standing rule that a creditor with a claim against the debtor when it files its bankruptcy petition cannot set off this prepetition claim against a postpetition debt to the bankruptcy estate. Such a setoff would allow the creditor to collect its prepetition claim ahead of other like claims and would violate the general rule that creditors' rights as to prepetition claims are determined according to the facts when the bankruptcy petition was filed. *Prudential Insurance Co. v. Nelson*, 101 F.2d 441, 39 Am.Bankr.Rep. (N.S.) 173 (6th Cir. 1939) cert. den. 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 489 (1939); Annot., 71 A.L.R. 804 (1931). United Pipe clearly cannot reduce its postpetition debt to Jackson by setting off its claims that arose prepetition.

The court's reasoning raises the question of whether the customers' claims that arose prepetition but were honored by United Pipe postpetition should also be treated as prepetition claims. However, some of the claims honored by United Pipe postpetition were clearly customers' claims that arose postpetition. The latter raise the question of whether postpetition debts between a creditor and the bankruptcy estate can be set off.

The trustee attempts to invoke the rule against setoff of a prepetition claim against a postpetition debt on the ground that all of United Pipe's postpetition claims are converted to prepetition claims under Bankruptcy Code § 348(d). 11 U.S.C.A. § 348(d). It provides:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of filing of the petition.

The other section referred to, § 503(b), sets out the kinds of claims that are administrative expenses entitled to priority in the order of payment over general unsecured claims. 11 U.S.C.A. §§ 503(b) & 507.

■■■ Section 348(d) was obviously intended to deal with the order of payment between unsecured claims that arose prepetition and unsecured claims that arose during the chapter 11 case before its conversion to chapter 7. The general rule is that administrative expenses of the chapter 11 have priority, but otherwise both the prepetition and the postpetition unsecured claims have the same rank.

■■■ United Pipe argues that this is all § 348(d) was intended to accomplish and it is not relevant to the question of setoff of postpetition debts. Section 348(d), however, says that the debts incurred during the chapter 11 phase of the case, except for administrative expenses, shall be treated as prepetition debts "for all purposes". This leads to the result argued for by the trustee—that any postpetition claims that are not administrative expenses must be treated as prepetition claims and cannot be set off against United Pipe's postpetition debt.

United Pipe attempts to avoid this result as to its postpetition claims on the ground that they are administrative expense claims for actual, necessary costs and expenses of preserving the bankruptcy estate. 11 U.S.C.A. 503(b)(1)(A).

Section 348(d) prevents administrative expense claims of the chapter 11 from being treated as prepetition claims, but it does not say that they can be set off against the creditor's postpetition debt to the bankruptcy estate. Section 348(d) implies that administrative expense priority is

the best treatment that such claims can be given. If so, setoff cannot be allowed, because it might prefer the claim over other administrative expense claims of the chapter 11. Equality of distribution can be assured by requiring the creditor to pay its full debt to the bankruptcy estate and to receive payment from the estate on its claim along with other claims of the same class. See *In re Chugiak Boat Works, Inc.*, 18 B.R. 292, 8 B.C.D. 1000, 6 Coll. Bankr.2d 273 (Bankr.D.Alaska 1982); 11 U.S.C.A. § 348(a)–(c).

Section 726(b) adds to the implication that administrative expense priority is the best treatment that can be given a postpetition claim from a converted chapter 11 case. It makes administrative expenses of the chapter 11 subordinate in the order of payment to administrative expenses of the chapter 7. 11 U.S.C.A. § 726(b).

Section 364 also adds to the implication that postpetition claims based on unsecured credit given to a chapter 11 debtor in possession are at best entitled to administrative expense priority or to a superpriority if approved by the court. 11 U.S.C.A. § 364(a), (b), (c)(1) & § 1107.

Preferment over other claims that are legally unsecured is a problem with setoff of prepetition debts. 4 *Collier on Bankruptcy* ¶ 553.02 (15th ed. 1985). But § 553 allows such setoffs. There is no such specific statutory authority for setoff of mutual postpetition debts.

In two cases decided under the Bankruptcy Act of 1898, the courts allowed setoff of postpetition debts. *In re Alfar Dairy, Inc.*, 458 F.2d 1258 (5th Cir.1972) cert. den. 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972); *Jefferson Union Co. v. American Radiator & S.S. Corp.*, 329 Mass. 692, 110 N.E.2d 385 (1953). In one case under the present Bankruptcy Code, the court allowed the creditor to set off money it advanced to the debtor postpetition to meet a payroll against the creditor's postpetition debt to the estate. *In re Princess Baking Corp.*, 5 B.R. 587, 6 B.C.D. 842, 2 Coll.Bankr.2d 1071 (Bankr.S.D.Calif. 1980). In another case under the Code the

court said, but did not hold, that mutual postpetition debts can be set off. *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 7 B.C.D. 69, 3 Coll.Bankr.2d 484 (Bankr.S.D. N.Y.1980).

In the *Alfar Dairy* case, the creditor's claim arose from the debtor's postpetition breach of an executory contract. Generally, a claim for damages from rejection of an executory contract was treated as a prepetition claim, but the debtor failed to reject the contract before or as part of the confirmation of its plan. This left the contract in effect and made the creditor's claim for damages caused by the breach a postpetition claim. The court allowed setoff on the ground that this claim and the creditor's postpetition debt were mutual debts under § 68 of the Bankruptcy Act. 11 U.S.C.A. § 108 (1976).

The court of appeals in *Alfar Dairy* did not make the point, but the creditor's claim may have been entitled to payment in full when the plan was confirmed as an administrative expense of the case. 11 U.S.C.A. §§ 737, 761–62, & 766 (1976) (Bankruptcy Act of 1898 §§ 337, 361–62, & 366); *In re W.T. Grant Co.*, 474 F.Supp. 788 (S.D.N.Y. 1979) aff'd 620 F.2d 319 (2d Cir.1980). The court of appeals was not faced with the question of whether to allow setoff of postpetition debts incurred in a chapter 11 case after its conversion to chapter 7 when the setoff might prefer the creditor's claim over other like claims.

Present chapter 11 also requires that a confirmed plan provide for full payment of administrative expense claims. 11 U.S.C.A. §§ 503(b), 507(a)(1), & 1129(a)(9).

In the *Jefferson Union* case, the trustees in bankruptcy sold goods to American Radiator and assigned their claim for the price to Jefferson Union. The trustees also bought goods from Tonawanda Iron, which assigned its claim against the trustees to American Radiator. Thus, Jefferson Union had the trustees' claim against American Radiator, and American Radiator had Tonawanda's claim against the trustees. The court said that § 68 of the Bankruptcy Act did not apply when the claim to be set off

was against the bankruptcy trustees for their purchase and not for purchases by the debtor. The court allowed the setoff.

It should be obvious that the creditor's claim that was set off in *Jefferson Union* represented definite assets added to the bankruptcy estate, since it was a claim for the price of goods sold to the trustees. The same can be said of the setoff allowed in the *Princess Baking* case decided under the Bankruptcy Code. The creditor had advanced $7,500 to the chapter 11 debtor in possession for it to meet its payroll. The creditor was allowed to set off this amount against its postpetition debt.

The *Shoppers Paradise* case did not involve the question of setoff of postpetition debts, though the court said that it is allowed.

Perhaps some administrative expenses of a chapter 11 case converted to chapter 7 should be allowed to be set off against the creditor's postpetition debt to the bankruptcy estate. The court, however, cannot say that United Pipe has such a claim. Its claims may be entitled to administrative expense priority because of benefit to Jackson in the continuation of its business under chapter 11, but the benefit is not necessarily the same as the amount of the claim, as in cases such as *Princess Baking* where the claim is for cash furnished to the debtor in possession.

█ The court is of the opinion that the better course in this case is to require United Pipe to pay its full debt to the bankruptcy estate and receive payment on its postpetition claim along with other like claims. This will assure equality of treatment of United Pipe's postpetition claim and other like claims. This is especially appropriate since there is no specific statutory authority for allowing setoff of postpetition debts.

The court has reached the general conclusion that there is no definite right to set off mutual postpetition claims that arose during the chapter 11 phase of a case converted to chapter 7. The court realizes that this result could affect the rehabilita-

tion of debtors under chapter 11. A prepetition creditor in essentially the same circumstances is allowed setoff by § 553. Denying the postpetition creditor the right to set off its claim against its postpetition debt in effect penalizes the creditor for dealing with a chapter 11 trustee or debtor in possession. This penalty or added risk, however, is a result of conversion of the case to liquidation under chapter 7. This result may have been intended on the ground that anyone who acquires an unsecured claim against a debtor already in chapter 11 necessarily assumes some added risk as to payment of the claim. This seems to be inherent in the statutory scheme as to postpetition unsecured claims against a chapter 11 trustee or debtor in possession.

The question of the extent of United Pipe's allowable postpetition claims is only partially before the court since the parties have not argued or presented evidence as to whether United Pipe's postpetition claims are allowed or allowable. Furthermore, the stipulated facts do not divide United Pipe's claims according to when it honored its customers' claims or when they arose. Thus, the court reserves for other proceedings the question of the amount of United Pipe's postpetition claims and the question of whether they are administrative expenses of the chapter 11.

 United Pipe also contended that it is entitled to recoup its claims against Jackson from its debt to Jackson. Recoupment, however, is more in the nature of a condition to payment arising in the same transaction or an abatement of damages. *In re Yonkers Hamilton Sanitarium, Inc.*, 34 B.R. 385 (S.D.N.Y.1983) aff'g 22 B.R. 427, 9 B.C.D. 505 (Bankr.S.D.N.Y.1982); *Lewis v. Woodfolk*, 61 Tenn. 25 (1872). The dealings between Jackson and United Pipe clearly involved setoff rather than recoupment.

### Summary

As to mutual prepetition debts, § 553 adopts the policy that a creditor should not be required to pay the debtor in full while being allowed to recover from the bankruptcy estate only the percentage ultimately paid on all unsecured claims, a percentage which may cause the creditor to receive less than what it has already paid the debtor. This policy, however, is not specifically carried over to mutual postpetition debts incurred during a chapter 11 case that has converted to chapter 7. It may apply to some claims by postpetition creditors but does not apply to United Pipe's postpetition claims. Thus, United Pipe must pay its full postpetition debt to the trustee without setoff of its postpetition claims. It may recover a substantial amount of this payment to the bankruptcy estate if its postpetition claims are allowed as administrative expense claims.

### The Preference Question

The court turns now to the preferential transfer question. Apparently Jackson's reimbursement of United Pipe's claims within 90 days before Jackson filed its chapter 11 petition does not raise setoff questions under § 553(b) but only preferential transfer questions under § 547. 11 U.S.C.A. § 547.

Within 90 days before Jackson filed its chapter 11 petition, it credited United Pipe's account or delivered it water tanks as reimbursement of warranty claims honored by United Pipe. The total amount reimbursed was $11,299.32.

 The reimbursement included $3,828.63 in claims that United Pipe had honored within 45 days before the reimbursement. The court's earlier conclusions mean that this amount was paid within 45 days after Jackson "incurred" the debt to United Pipe within the meaning of § 547(c)(2). 11 U.S.C.A. § 547(c)(2). That section as it applies to this case provides that payments made in the ordinary course of business within 45 days after the debt was incurred are not avoidable as preferential transfers. There was no proof as to this particular transaction but it was apparently a reimbursement in the ordinary course of business between United Pipe

**506**

and Jackson. The court holds that the $3,828.63 paid within 45 days after United Pipe honored the claims is within the exception.

By honoring claims under Jackson's warranty, United Pipe may have given "new value" within the meaning of the exception in § 547(c)(4) but the court cannot make such a determination from the proof before it.

In any event, the court concludes that the trustee cannot recover the remainder of the reimbursement. Though United Pipe admitted some of the elements of a preferential transfer as set forth in § 547(b), it did not admit that the reimbursement preferred it under § 547(b)(5). There is no proof in the record that shows that United Pipe was preferred under § 547(b)(5). Therefore, the trustee cannot recover.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.