**In re Truman N. MORRIS, Jr. and Molly B. Morris, Debtors.**

**Bankruptcy No. 90–53056–RBK.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 7, 1993.

Patrick P. Rogers, Corpus Christi, TX, for debtors.

Messrs. Martin I. Roos and Timothy N. Tuggey, Oppenheimer, Rosenberg & Kelleher, Inc., San Antonio, TX, for creditor, Sahara Las Vegas Corp.

### OPINION ON MOTION FOR REHEARING

RONALD B. KING, Bankruptcy Judge.

The question in this case, on rehearing, is whether gambling debts incurred by a debtor *after* the filing of a Chapter 7 bankruptcy case, but *prior* to multiple conversions of the case, should be treated as pre-petition claims and discharged. An affected creditor filed a motion alleging "cause" under section 348(b) of the Bankruptcy Code [1] for the Court to determine the date of the order for relief as the date of the filing of the case rather than the date of conversion. Such action would prevent discharge of the post-petition but pre-conversion debts. Because sufficient cause exists, the motion will be granted, and the Motion for Rehearing will be denied.

On October 1, 1990, the Debtors in this case filed for relief under Chapter 7 of the Bankruptcy Code. On October 14, 1990, Truman Morris (the Debtor), while attending a seminar in Las Vegas, borrowed $40,000.00 from Sahara Las Vegas Corporation (Sahara) to finance an evening of gambling. The following day, Mr. Morris borrowed another $35,000.00 from Sahara for the same purpose. During the same time frame, the Debtor also incurred approximately $30,000.00 in gambling debts to

1. 11 U.S.C. §§ 101–1330 (1988) (referred to herein as the Bankruptcy Code).

Caesar's Palace and the Las Vegas Hilton. These monies have not been repaid.

On October 31, 1990, the Debtors filed a notice to convert their case from Chapter 7 to Chapter 11. No party objected to the conversion and, pursuant to section 706(a) of the Bankruptcy Code and Local Rule 1019(a), the case was automatically converted to Chapter 11. As grounds for the conversion, the Debtors later stated that they had hoped to sell certain real property to generate funds for the unsecured creditors. On November 16, 1990, the Debtors filed amended schedules of assets and liabilities. The only differences between the original and amended schedules were the addition of the post-petition claims of the three gambling casinos, Caesar's Palace, the Las Vegas Hilton, and Sahara.

On December 10, 1990, Sahara filed an adversary proceeding seeking to have its debt declared nondischargeable under section 523(a)(2)(A) & (B). The Debtors filed an answer and served upon Sahara a set of interrogatories, requests for production, and a request for admissions. Sahara failed to respond to the interrogatories and requests for production, and responded to the request for admissions after the deadline. The Debtors then filed a motion for sanctions and to compel answers to the discovery requests. Sahara failed to appear at the hearing on the motion. The Court granted the Debtors' motion and by order dated May 13, 1991, directed that Sahara comply with the discovery requests within ten days, pay the Debtors' expenses and attorney's fees in the sum of $1,500.00, and appear for depositions within twenty days. Sahara failed to comply with this order in all respects.

On February 15, 1991, before the hearing on the adversary proceeding, the Debtors filed a motion to convert their case back to Chapter 7. No party objected to the motion and the order reconverting the case to Chapter 7 was entered March 4, 1991.

A docket call for trial of the adversary proceeding was held on June 10, 1991. At the hearing, new counsel for Sahara announced an agreement to dismiss the adversary proceeding with prejudice, but reserved the right to pursue other remedies, if any existed. An agreed order dismissing the adversary proceeding was entered effectuating this agreement. The Debtors' Chapter 7 discharge was entered in the bankruptcy case on June 17, 1991.

On July 24, 1992, Sahara filed this motion in the bankruptcy case under section 348(b) requesting that the Court find "cause" to determine the date of the order for relief as the October 1, 1990 filing of the original Chapter 7 petition. Because section 727(b) provides that a discharge under Chapter 7 "discharges the debtor from all debts that arose before the date of the order for relief under this chapter," the March 4, 1991 order for relief caused Sahara's claim to be included within the debts discharged. A change in the date of the order for relief back to the October 1, 1990 original filing date would make the debt post-petition and, therefore, not included within the discharge. The Debtors filed a response to Sahara's motion and a request for sanctions.

### ISSUES

1. Whether section 348(d) prescribes pre-petition treatment for Sahara's claim, thereby rendering it discharged.

2. Whether sufficient "cause" exists under section 348(b) to determine the date of the Debtors' order for relief as the date of the original Chapter 7 filing, thereby preventing the discharge of Sahara's claim.

### DISCUSSION

#### I. Applicability of section 348(d).

In their response to the motion, the Debtors cite section 348(d) for the proposition that Sahara's claim should be treated as if it had arisen prior to the filing of the original Chapter 7 petition. Specifically, section 348(d) provides:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim

had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d) (1988). The gambling debts under consideration in this case would not qualify for administrative expense treatment under section 503(b). Also, these debts were incurred after the date of the order for relief in the original Chapter 7 case, but prior to conversion of such case to Chapter 11 or back to Chapter 7 under section 1112. Thus, a literal reading of the statute could support the result argued for by the Debtors: the gambling debts should be treated as if they had arisen immediately before the date of the filing of the original Chapter 7 petition. Furthermore, because the Debtors received their discharge under Chapter 7, the gambling debts would be discharged as "debts that arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b) (1988); *In re Lennon*, 65 B.R. 130, 132 (Bankr.N.D.Ga.1986).

■ This analysis, however, ignores the legislative history and case law construing the statute. It also ignores the fact that the conversion to Chapter 11 constitutes an order for relief under that chapter. The comments in the House and Senate Reports indicate that "[section 348(d)] provides for special treatment of claims that arise *during chapter 11 or 13 cases* before the case is converted to a liquidation case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 337 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 48 (1978), *reprinted in* 1978 U.S.C.C.A.N. 50 & 510 (emphasis added). One treatise states:

> [Section 348(d)] applies only with respect to a claim *arising in a chapter 11,* 12 or 13 case before the case is converted into a chapter 7 case. *It does not apply with respect to claims arising in the context of a chapter 7 case* which is later converted into a case under chapter 11, 12, or 13.

1 Collier Bankruptcy Manual ¶ 348.03[2] (Lawrence P. King, et al. eds., 3d ed. 1993) (emphasis added). Case law also supports this proposition. *Independent Fire Ins. Co. v. Pender (In re Phillip)*, 948 F.2d 985, 989 (5th Cir.1991) (section 348(d) "expressly

provides for special treatment of only those claims that arise against the estate during Chapter 11 or Chapter 13 cases that are later converted"); *In re West Johnson Corp.*, 96 B.R. 182, 184 (Bankr.W.D.Wis. 1988); *In re Blue Ribbon Delivery Serv., Inc.*, 31 B.R. 292, 293 (Bankr.W.D.Ky. 1983).

Other cases have discussed the administrative expense purpose of this statutory provision:

> Section 348(d) was obviously intended to deal with the order of payment between unsecured claims that arose prepetition and unsecured claims that arose during the chapter 11 case before its conversion to chapter 7. The general rule is that administrative expenses of the chapter 11 have priority, but otherwise both the prepetition and the postpetition unsecured claims have the same rank.

*Still v. United Pipe & Supply Co. (In re W.L. Jackson Mfg. Co.)*, 50 B.R. 498, 503 (Bankr.E.D.Tenn.1985); *Blue Ribbon*, 31 B.R. at 293. Section 348(d) is intended "to give chapter 11 administrative claimants priority over unsecured claims when a case is converted from chapter 11 to chapter 7." *White Front Feed & Seed v. State Nat'l Bank of Platteville (In re Ramaker)*, 117 B.R. 959, 963 (Bankr.N.D.Iowa 1990).

■ In this case, the debts were not incurred in the Chapter 11 case. The purpose for which section 348(d) was created, therefore, is not served because there are no Chapter 11 debts which should receive equal treatment with pre-petition claims, and no Chapter 11 administrative expenses which should receive priority status. Section 348(d) does not apply in this situation in which debts were incurred during the pendency of the initial Chapter 7 case.

## II. The "cause" requirement of 11 U.S.C. § 348(b).

Sahara asks this Court to find that cause exists under section 348(b) to establish the date of the order for relief as the date of the original filing of the Chapter 7. Section 348(b) provides:

> Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b),

728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1301(a), 1305(a), 1201(a), 1221, and 1228(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1307, or 1208 of this title means the conversion of such case to such chapter.

11 U.S.C. § 348(b) (1988). Thus, this provision "details those sections of the Code—subject to a contrary order for cause by the court—in which the conversion order should have the same effect as an order for relief." *In re State Airlines, Inc.*, 873 F.2d 264, 268 (11th Cir.1989).

Because the Debtors received a discharge under Chapter 7, section 727(b) applies and provides a discharge "from all debts that arose before the date of the order for relief under this chapter." As provided in section 348(b), in a case which has been converted pursuant to section 1112, "the order for relief under this chapter" is the date of *conversion* to the Chapter 7 case. This case was converted under section 1112 to Chapter 7 on March 4, 1991, and Sahara's debt would be discharged because it arose before the date of the order for relief under the converted Chapter 7. 11 U.S.C. § 727(b) (1988). It is this result that Sahara desires to avoid by asking this Court to find that "cause" exists for adjusting the date of the order for relief to the date of the original filing of the Debtors' Chapter 7 case, rather than the date of the subsequent conversion from Chapter 11 to Chapter 7.

"Cause" is not a defined term under the Bankruptcy Code. In addition, no reported opinion exists in which a court considered the cause requirement of section 348(b) to

grant the relief Sahara seeks. Thus, this appears to be a case of first impression.

▮ Various Bankruptcy Code provisions allow the Court to grant certain forms of relief "for cause."[2] Because the Code provides no definition of this term, courts have flexibility in applying these provisions. " '[C]ause' is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986) (citing *In re Victory Constr. Co.*, 9 B.R. 549, 558–60 (Bankr.C.D.Cal.1981), *vacated on other grounds*, 37 B.R. 222 (Bankr.9th Cir.1984)). Several courts, in interpreting Code sections containing "for cause" language, have noted that a lack of good faith constitutes sufficient cause to grant the equitable remedy sought.[3] The Bankruptcy Code in general "has been endowed with requirements of good faith in the construction of many of its provisions." *Little Creek*, 779 F.2d at 1072. In addition, "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *Id.* at 1071 (citing *Victory*, 9 B.R. at 551–60). Therefore, this Court finds that a showing of bad faith may constitute sufficient "cause" under section 348(b) to retain the original order for relief date in a converted case.

### III. Does cause exist in this case?

Sahara maintains that "[t]he serial conversion from a Chapter 7 to a Chapter 11, back to a Chapter 7, appears to be nothing more than a scheme by the Debtors to prohibit Mr. Morris' [sic] gambling debts from becoming post-petition obligations."[4]

---

**2.** E.g., 11 U.S.C. §§ 303(e), 324(a), 348(b), 349(a) & (b), 350(b), 362(d)(1), 363(k), 365(d)(1) & (4), 502(j), 505(b)(1)(B), 521(2)(A) & (B), 557(c)(1), 707(a), 930(a), 1104(a)(1), 1112(b), 1121(d), 1202(b)(2), 1204(a), 1208(c), 1222(c), 1224, 1229(c), 1307(c), 1322(c), & 1329(c) (1988).

**3.** *E.g.*, cases finding a lack of good faith to constitute "cause" for: (1) Lifting the stay pursuant to § 362(d)(1), *In re Sar–Manco, Inc.*, 70 B.R. 132 (Bankr.M.D.Fla.1986); *In re Yukon En-*

*ter., Inc.*, 39 B.R. 919 (Bankr.C.D.Cal.1984); (2) Dismissing the case pursuant to § 1112(b), *In re Humble Place Joint Venture*, 936 F.2d 814, 816–17 (5th Cir.1991); *In re Kerr*, 908 F.2d 400, 404 (8th Cir.1990); (3) Dismissing the case pursuant to § 1307(c), *In re Powers*, 135 B.R. 980, 990–91 (Bankr.C.D.Cal.1991); *In re Newsome*, 92 B.R. 941, 943 (Bankr.M.D.Fla.1988).

**4.** Sahara's Motion at 2.

Sahara also notes that the case was converted twice within "a short period of time" and that "[t]he case was originally converted from a Chapter 7 to a Chapter 11 without any apparent legitimate reorganization purpose."[5] The Debtors respond by asserting that Sahara had ample opportunities throughout the case to protect its rights, and that the motion is barred by *res judicata* or the equitable doctrine of laches.

### A. Sahara's conduct during prior litigation.

Following the initial conversion of the Debtors' case to Chapter 11, Sahara filed an adversary proceeding seeking to have its debts declared nondischargeable under section 523(a)(2)(A) & (B). During the pretrial portion of this adversary, prior counsel for Sahara ignored legitimate discovery requests by the Debtors. The Court ordered Sahara to comply with the discovery requests within ten days, to appear for depositions within twenty days, and to pay $1,500.00 in sanctions to the Debtors. Sahara failed to comply with this order in all respects. At the docket call for trial of the adversary proceeding, Sahara's present counsel announced an agreement to dismiss the adversary proceeding with prejudice. Sahara thus waived its right to contest the dischargeability of the gambling debts under section 523(a)(2)(A) & (B).

The Debtors assert that this motion should fail because Sahara did not pursue its adversary proceeding with due diligence and voluntarily dismissed it with prejudice. While it is true that counsel for Sahara did not diligently pursue the dischargeability adversary and that it was dismissed with prejudice, the question is whether this precludes Sahara's right to seek the remedy now under consideration.

### B. *Res Judicata.*

■ On rehearing, the Debtors argue that Sahara's motion is barred by the doctrine of *res judicata* in two respects. First, the Debtors assert that the dismissal of the adversary proceeding with prejudice bars not only the determination of the dischargeability of the debt, but also the debt itself. In the adversary proceeding, Sahara sought to have the debt owed to Sahara by the Debtors declared nondischargeable pursuant to section 523(a)(2) of the Bankruptcy Code as being obtained by false pretenses, a false representation, actual fraud, or a written false financial statement. In addition, however, Sahara sought a money judgment for the debt owing by the Debtor to Sahara. If Sahara dismissed its action on the debt with prejudice, it would lack standing to bring this motion because it would no longer have a stake in the outcome of the controversy. *Heilbronner v. Community Sav. Bank (In re Shea)*, 15 B.R. 822, 824 (Bankr.W.D.N.Y. 1981) (citing *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d, 343 (1975)). The issue is whether Sahara dismissed not only the nondischargeability portion with prejudice, but also the action on the debt with prejudice.

At the docket call for trial of the adversary proceeding, the attorneys announced an agreement that the dischargeability complaint would be dismissed with prejudice, but that Sahara would reserve the right to pursue other remedies, if any. The Order dismissing the adversary proceeding similarly stated:

> Be it remembered that on the 10th day of June, 1991, the above styled and numbered cause was called for Docket Call and Pretrial Conference. The Plaintiff, SAHARA LAS VEGAS CORP., appeared by and through its counsel and the Defendants, T.N. MORRIS, JR. and MOLLY MORRIS, appeared by and through their counsel. The court called the case for announcement for trial and the Defendants, T.N. MORRIS, JR. and MOLLY MORRIS, announced ready. The Plaintiff, SAHARA LAS VEGAS CORP., announced that it desired to dismiss with prejudice its lawsuit *asserting the dischargeability of the debt* involved in this adversary proceeding filed against the Defendants, T.N. MORRIS, JR. and MOLLY MORRIS, *and pursue other*

---

**5.** *Id.* at 3.

*remedies,* if any. The Defendants thereupon announced that based on the representation that Plaintiff's desire to dismiss the lawsuit against Defendants with prejudice to refile same, the Defendants would withdraw their announcement of ready and accept Plaintiff's dismissal with prejudice.

Therefore, based upon the representations and announcement of the parties, it is ordered that the lawsuit of the Plaintiff, SAHARA LAS VEGAS CORP., filed against Defendants, T.N. MORRIS, JR. and MOLLY MORRIS, be and is hereby dismissed with prejudice. (Emphasis added.)

Significantly, the Order stated that Sahara dismissed its "lawsuit asserting the dischargeability of the debt" involved in the adversary, but reserved the right to pursue other remedies, if any. It is now disputed whether the action on the debt itself was dismissed with prejudice or was reserved in the right to pursue other remedies.

"Consent orders are interpreted as contracts and are to be construed only by reference to the 'four corners' of the order itself." *Robinson v. Vollert,* 602 F.2d 87, 92 (5th Cir.1979), *reh'g denied,* 609 F.2d 1177 (5th Cir.1980). As stated by the United States Supreme Court:

Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.

*United States v. Armour & Co.,* 402 U.S. 673, 681–682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) (emphasis in original, footnote omitted).

■ Although the decretal portion of the Order dismissing the adversary proceeding stated that the "lawsuit" was dismissed with prejudice, the preceding paragraph stated the intent to dismiss with prejudice the "lawsuit asserting the dischargeability of the debt" and reserving other remedies to Sahara. If Sahara dismissed the claim for money judgment with prejudice, no other remedies would be available. In order to give effect to each part of the Order, the language reserving other remedies, if any, and dismissing the lawsuit asserting the dischargeability of the debt must be construed to mean that the requested declaration of nondischargeability was dismissed with prejudice, but that the claim on the debt remained intact so that Sahara would be free to pursue other remedies, if any. This interpretation gives effect to all of the provisions of the Order rather than focusing upon one particular word or phrase to the exclusion of others. It is, therefore, the opinion of the Court that *res judicata* does not bar the claim on the debt.

The second form of *res judicata* argued by the Debtors is that dismissal of the nondischargeability relief in the adversary proceeding bars this request for a determination of a different date for the order for relief. Specifically, the relief sought by Sahara is barred by *res judicata* if: (1) there is an identity of parties; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior decision was a final judgment on the merits; and (4) the causes of action are identical. *Bank of Lafayette v. Baudoin (In re Baudoin),* 981 F.2d 736, 740 (5th Cir.1993); *Eubanks v. FDIC,* 977 F.2d 166, 169 (5th Cir.1992). There is no dispute concerning the first three elements: the parties are identical, the prior judgment was rendered by a court of competent jurisdiction, and the prior de-

cision was a final judgment on the merits. The element in dispute is whether the causes of action are identical.

■ The causes of action in the prior adversary proceeding which was dismissed with prejudice were based upon section 523(a)(2) of the Bankruptcy Code. A debt may be declared nondischargeable under 523(a)(2)(A) where money or credit was obtained by false pretenses, a false representation, or actual fraud. A debt may also be declared nondischargeable under 523(a)(2)(B) if the money or credit was obtained by the use of a false financial statement in writing. Necessarily, the conduct at issue is that of the debtor at the time of the alleged fraud or use of the false financial statement. It is undisputed in this case that such conduct of the Debtor occurred on October 14 and 15, 1990, at the time of the extension of credit by Sahara to the Debtor. The alleged cause of action for nondischargeability of the debt by virtue of fraud or use of a false financial statement is barred by *res judicata* because of the dismissal of the adversary proceeding with prejudice.

■ The issue in the motion to determine the date for the order for relief, however, focuses upon the conduct of the Debtor in converting this bankruptcy case from Chapter 7 to Chapter 11 and then back to Chapter 7. Such conduct did not occur on October 14 and 15, 1990, but rather occurred *after* the Debtor and his counsel realized the legal consequences of postpetition gambling debts which the Debtor incurred. At that point, the Debtors filed their notice to convert the case from Chapter 7 to Chapter 11. Even assuming that the debt was not incurred through fraud or by use of a false financial statement, there is a separate and distinct issue concerning the Debtors' good faith in, at a later date, converting the Chapter 7 case to Chapter 11. Under the test stated in *Baudoin*, the critical issue is whether the two actions are based upon the same nucleus of operative facts. This Court finds that there are different operative facts relating to the two causes of action in that the alleged fraud or false financial statement at the time the debts were incurred is a matter separate from the good faith of the Debtors in converting their Chapter 7 case to a case under Chapter 11 and back to Chapter 7. This Court finds that Sahara's motion is not barred by *res judicata* because the relief sought under section 348(b) is an independent cause of action from a dischargeability action under section 523(a)(2) and is based upon a *different* nucleus of operative facts.

## C. Laches.

■ The Debtors further maintain that Sahara's motion is barred by the doctrine of laches. This argument is based on Sahara's failure to object to the conversions and its delay in filing the section 348(b) motion. When the Debtors first converted their case from Chapter 7 to Chapter 11, under section 706(a), such conversion was as a matter of right, subject to the good faith requirement implicit in any bankruptcy filing. When the Debtors filed a motion to convert their case back to Chapter 7, however, under section 1112(a), such conversion was not a matter of right. Therefore, Sahara could have objected to the conversion at that time, or filed its section 348(b) motion asking the Court to allow conversion of the case to Chapter 7 while, for cause, maintaining the original date of the order for relief. Because no party in interest objected, the Court reconverted the case and section 348(b) changed the date of the order for relief. Sahara waited approximately sixteen months after the conversion to Chapter 7 of the Debtors' case and thirteen months after the dismissal of the dischargeability adversary to file the section 348(b) motion to adjust the order for relief date. Because there is no deadline to file a motion under section 348(b), the Debtors allege that this delay constitutes laches.

■ "Under the doctrine of laches, an otherwise meritorious suit must be dismissed where there has been an inexcusable delay in bringing the claim for relief and where the delay has *unreasonably prejudiced* the defendant." *Baylor Univ. Medical Ctr. v. Heckler*, 758 F.2d 1052, 1057 (5th Cir.1985) (emphasis added, foot-

note omitted). The mere passage of time is insufficient to constitute laches. The defendant must show undue prejudice resulting from an unreasonable delay in bringing suit. *West Wind Africa Line, Ltd. v. Corpus Christi Marine Serv. Co.*, 834 F.2d 1232, 1234 (5th Cir.1988). Prejudice does not occur merely because one loses what he otherwise would have kept. There must be a delay which results in a disadvantage in asserting and establishing a claimed right or defense. *Mutual Life Ins. Co. of New York v. Bohart (In re Bohart)*, 743 F.2d 313, 327 (5th Cir.1984); *Esso Int'l, Inc. v. The SS Captain John*, 443 F.2d 1144, 1150 (5th Cir.1971). One may also show prejudice by proving other damage caused by detrimental reliance on the adversary's conduct. *Bohart*, 743 F.2d at 327.

In this case, the Debtors have provided no evidence demonstrating how Sahara's delay in bringing this motion has caused prejudice. There is no contention that testimony or documentary evidence was unavailable, or that damage was caused by reliance on the delay. The only contentions were that there was an unreasonable delay and Sahara was not entitled to the relief sought. Undue prejudice has not been shown, and the action is not barred by laches.

### D. The Debtors' motives in twice converting the case.

■ There being no bar in law or equity to Sahara's motion, the inquiry now focuses on the Debtors' motives in twice converting their case. The question is whether the conversions were in bad faith and for the purpose of discharging the post-petition gambling debts.

Approximately two weeks after filing a Chapter 7 petition, Debtor Truman Morris traveled to Las Vegas and incurred over $100,000.00 in gambling debts at three different hotel casinos over a two-day period of time. One month later, the Debtors filed amended schedules. The only difference between the original and amended

schedules was the addition of the claims of Caesar's Palace, the Las Vegas Hilton, and Sahara. All three claims were listed as "disputed" and shown in the amount of "$0.00."

Two weeks after incurring the gambling debts, the Debtors converted their case to Chapter 11, purportedly because they believed they had some equity in certain properties that they hoped to sell to generate funds for the unsecured creditors. The Debtors' schedules, however, showed secured debt exceeding the value of each of the properties. In addition, the Debtors' "Statement of Intention," filed with their schedules, indicated an intent to surrender the properties to the respective lienholders. Thus, the Debtors' position regarding equity in these properties *before* incurring the gambling debts was inconsistent with their position *after* incurring the gambling debts. If the Debtors originally believed that they should surrender the properties because the properties had no equity and the amount of unsecured debt was large, it is difficult to understand how incurring over $100,000.00 of *additional* unsecured debt would change the situation. Clearly, the primary motive behind the first conversion was to somehow obtain discharge of the post-petition gambling debts.

Although the Debtors were technically entitled to convert their case the first time as a matter of right, the issue is whether there was a legitimate reorganization purpose behind the conversion of the case to Chapter 11. If the Debtors had been able to obtain confirmation of a plan in Chapter 11, the gambling debts could have been discharged under section 1141(d)(1) as preconfirmation debts.[6] *Bank of Louisiana v. Pavlovich (In re Pavlovich)*, 952 F.2d 114, 117 (5th Cir.1992). Thus, the conversion to Chapter 11 provided a mechanism by which the post-petition gambling debts could be discharged.

The Debtors remained in Chapter 11 for a period of four months. During that time, no plan or disclosure statement was filed

---

**6.** The debts could have been discharged unless excepted from discharge under § 523. 11 U.S.C. § 1141(d)(2) (1988).

and the case was converted back to Chapter 7. At the hearing on this motion, counsel for the Debtors explained these actions by stating:

> The basis for our plan was to determine whether or not we could liquidate assets on a more orderly basis in a business-like manner, and use that process to generate additional funds for everyone involved; not just the original group of unsecured creditors. We examined it, we pursued it, we talked to some real estate people. After several months of discussions and attempts to sell the properties, we realized that there would probably be no measurable benefit to be realized from an orderly sale of those properties. So, we had a choice at that point. We could either attempt to confirm a liquidating plan of reorganization, which I think under 1141 there would be no question of dischargeability of the movants' debt, but we instead elected to do the simplest thing which we felt like in the long run might generate some additional funds for the estate—and that would be simply to convert and allow a Chapter 7 trustee to liquidate.

While this statement is one explanation for the Debtors' successive conversions, it is also clear that two weeks after filing bankruptcy, one of the Debtors incurred over $100,000.00 in gambling debts over a two-day period in Las Vegas. The only change in the amended schedules filed in the Chapter 11 case was the addition of the gambling debts. It thus appears that the Chapter 7 case was converted to Chapter 11 *solely* to obtain discharge of the post-petition gambling debts. To allow such a result would run afoul of the good faith requirement implicit in every bankruptcy case. *In re Humble Place Joint Venture*, 936 F.2d 814, 816–818 (5th Cir.1991); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071–1073 (5th Cir.1986). Although it does not appear from the evidence that the Debtors set out, in advance, to use the provisions of the Bankruptcy Code to "engineer" the discharge of gambling debts, there is sufficient evidence of bad faith in twice converting the case to warrant the relief Sahara requests.

## IV. Conclusion.

The circumstances in this case show the existence of cause to change the date of the order for relief to October 1, 1990, the original date of filing. The conversions to Chapter 11 and back to Chapter 7 served no legitimate bankruptcy purpose and should be disregarded.

The prior Opinion of this Court is withdrawn. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 and Fed. R.Bankr.P. 7052 and 9014. An order granting Sahara's motion has been previously rendered. An order denying the Debtors' Motion for Rehearing will be rendered contemporaneously herewith.