**In the Matter of Timothy W. TOBIASON, Debtor.**

**Bankruptcy No. BK92–41795.**

United States Bankruptcy Court, D. Nebraska.

July 3, 1995.

Michael C. Washburn, Omaha, NE, for debtor.

Alan V. Johnson, Topeka, KS, for objecting creditors.

### MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This case is before the court to consider confirmation of the debtor's Amended Chapter 13 Plan, and an objection to confirmation. I conclude that the plan was not filed in good faith, and that it does not provide to pay unsecured creditors as much as they would be paid in a Chapter 7 case. The plan is not confirmed.

## FINDINGS OF FACT

The objecting creditors are shareholders in companies with which the debtor was previously affiliated—the "Designer Companies" and Designer Phosphate and Premix International, Inc. (DPPI). The "Designer Companies" consisted of three companies of which the debtor was president. These companies were later merged with a fourth company to form DPPI, of which the debtor was an officer and director. Designer Companies and DPPI were involved with the production of various chemical products and processes, including the development of a new, more economical feed for cattle.

In 1991, the objecting creditors filed an action in the United States District Court for the District of Nebraska against the debtor and others, alleging fraud and misrepresentation by the debtor in soliciting investments in his various companies. (Case No. 8:CV 91–00666). That case was transferred to bankruptcy court in April of 1993, after the filing of Chapter 7 bankruptcy by the debtor. (BK92–41795, A93–8065). Adversary No. A93–8065 was later consolidated with another adversary proceeding brought by the same creditors, A93–4019, which sought a determination of dischargeability pursuant to § 523(a)(2)(A) and § 523(a)(4). Prior to resolution of these adversary proceedings, the Chapter 7 bankruptcy was converted to this Chapter 13 case.

The debtor has now filed an Amended Chapter 13 Plan, and is seeking confirmation. There are no allowed secured claims. The Amended Plan proposes to pay the trustee the sum of $55.56 per month, $50.00 of which will be distributed to unsecured creditors. Nonpriority unsecured creditors will also receive $2,300.00 in 1996 and 1997 which consists of a portion of $6,000.00 consulting income the debtor will receive during each of those years. The debtor will also receive $6,000.00 in consulting income in 1995, however this money will be used to pay income taxes owed by the debtor.

The objecting creditors assert that the Amended Plan should not be confirmed because: 1) the plan has not been proposed in good faith; and 2) the plan does not meet the

best interests of creditors test of § 1325(a)(4).

The objecting creditors assert that the plan has not been proposed in good faith for several reasons. First, the objecting creditors assert that the aggregate unsecured claims, including disputed claims, total over $1,000,000.00, and the debtor proposes to pay less than .0035 percent of these claims. Second, the objecting creditors assert that the debtor has failed to disclose a stock purchase option he owns, and the plan fails to provide for its liquidation. This stock purchase option is in regard to common stock owned in a company known as Toby's Chemical Company. Third, the objecting creditors assert that the debtor has only provided for a three year plan when a five year plan is possible, as the debtor will continue to receive consulting income after completion of the proposed plan. Fourth, the objecting creditors assert the debts incurred by them would be nondischargeable in Chapter 7 bankruptcy, and the debtor should not be able to obtain a discharge by filing Chapter 13 bankruptcy. Finally, the objecting creditors argue that the debtor is attempting to avoid paying his debts, rather than seeking rehabilitation.

The objecting creditors assert that the Amended Plan does not meet the best interests of creditors test of § 1325(a)(4) because it does not provide to pay nonpriority unsecured creditors at least as much as they would receive in a Chapter 7 liquidation. The objecting creditors rely on the fact that the plan fails to pay creditors a pro rata distribution of proceeds from the stock option.

The debtor argues that the stock option has no value to the bankruptcy estate because it is nonassignable, and because it is not enforceable under the terms of a Restrictive Transfer Agreement entered into by the shareholders of Toby's Chemical Company. Furthermore, the debtor asserts that all of the requirements for confirmation are satisfied, and that a five year plan is not required. Lastly, the debtor asserts that both this case and the proposed plan were filed in good faith, and that there has been no finding that the claims of the objecting creditors arise from willful and malicious injury or from fraud, which grounds would except the claims from discharge pursuant to § 523(a)(4) and (6) in a Chapter 7 case. Even if there was a finding of willful and malicious injury, the debtor asserts that the debts in question are dischargeable in Chapter 13 absent extremely egregious circumstances.

## DISCUSSION

I conclude that the Amended Plan was not proposed in good faith and that it fails to meet the best interests of creditors test.

*GOOD FAITH:*

■ Section 1325 of the Bankruptcy Code requires, among other things, that a Chapter 13 plan be proposed in "good faith." 11 U.S.C. § 1325(a)(3) (1995). The Eighth Circuit Court of Appeals has adopted a "totality of the circumstances" approach to the good faith inquiry, which looks at various facts and circumstances on a case-by-case basis to determine if a particular debtor is acting in violation of the provisions, purpose, or spirit of Chapter 13 of the Bankruptcy Code. *In re Estus,* 695 F.2d 311, 314–17 (8th Cir.1982); *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987); *In re LeMaire,* 898 F.2d 1346, 1349, 1353 (8th Cir.1990). The amount of proposed payments to unsecured creditors is one factor to be considered in the good faith analysis, but the inquiry does not end with that factor. *In re Estus,* 695 F.2d at 317 (enumerating various factors that can be considered); *Education Assistance Corp.,* 827 F.2d at 1227. In addition to the percentage payment, the court may consider other factors and circumstances, including the debtor's earning potential and past employment history, the duration of the plan, the accuracy of the information provided by the debtor, whether the plan is preferential to certain creditors, whether secured claims are modified by the plan, whether the debt involved would be nondischargeable in Chapter 7, any special circumstances, the frequency of past bankruptcy filings by the debtor, the sincerity and motivation of the debtor, and the burden such plan would place on the trustee. *In re Estus,* 695 F.2d at 317 (citations omitted). This list of factors is not exclusive. In reaching

my decision on the good faith issue, I have considered these factors.

 As the first basis for a finding of bad faith on the part of the debtor, the objecting creditors assert that the debtor proposes to pay only .0035 percent of their claims. I conclude that this fact does not warrant a finding of bad faith in the present case. It is evident that, although the percentage repayment of unsecured creditors is low, the debtor will be contributing all available disposable income to his plan over the required three year period. Furthermore, the debtor's liability for the asserted claims remains disputed and unresolved. The claims of the objecting creditors are based on the assumption that the debtor is personally liable as an officer of the various companies for the investment losses of shareholders. Such liability has not been established and there is no outstanding judgment against the debtor for these amounts. There is no assertion on the part of the objecting creditors that the debtor in anyway embezzled money invested in the companies, or that he has such money in his personal possession. In addition, a low percentage payment on claims does not, by itself, evidence bad faith, especially where the amount of those claims greatly exceeds the income and assets of the debtor, as in the present case. Consequently, I conclude that the low payment percentage of unsecured claims under the Amended Plan does not warrant a finding of lack of good faith.

 Second, the objecting creditors assert that the debtor acted in bad faith by failing to disclose the stock purchase option ("Option Agreement") and to provide for its liquidation in the plan. The Option Agreement is between the debtor and his brother, Trent Tobiason. Trent Tobiason was the holder of 635 shares of common stock in Toby's Chemical Company, a company formed by the debtor, Trent Tobiason, and Don Jacobsen in October of 1989. In the Option Agreement, Trent Tobiason granted the debtor the right to purchase 595 shares of stock in Toby's Chemical Company at $1.00 per share for a period of ten years, commencing in November of 1991.

Under the terms of the Option agreement, the debtor's interest may not be transferred or assigned, and is expressly not subject to involuntary exercise, garnishment, or execution. The debtor argues that the Option Agreement is of no value to the bankruptcy estate because it is nonassignable, and therefore is not transferable to the trustee, and because it is unenforceable due to a separate Restrictive Transfer Agreement entered into by all the shareholders of Toby's Chemical Company prior to execution of the Option Agreement. The Restrictive Transfer Agreement provides that none of the stockholders of Toby's Chemical Company can transfer their stock interest to another party without the written consent of all other stockholders, or without giving the corporation and the other stockholders, respectively, the right to purchase the shares prior to the transfer to the third party.

 I conclude that the debtor's interest in the Option Agreement is property of the bankruptcy estate under § 541. The debtor's argument that restraints on alienation or transfer of the stock option prevent the trustee from administering the stock option as property of the estate is without merit. However, more importantly, the failure to disclose an interest in property is properly considered as evidence of bad faith. The fact that the debtor asserts that the undisclosed asset is of no value does not cure or neutralize the negative inference of bad faith. Indeed, in the context of discharge, it has been found that even a failure to disclose exempt property may bar discharge in a Chapter 7 case. *See Mertz v. Rott,* 955 F.2d 596 (8th Cir.1992). Thus, I conclude that the failure to disclose the stock option is evidence of bad faith. The fact that the debtor may have believed that the stock option was worthless is immaterial. Creditors are entitled to full disclosure and to form their own opinion, after investigation, as to value of property of the estate.

 The third basis of the objecting creditors for the assertion that the debtor has not proposed his plan in good faith is the fact that the debtor has only provided for a three year plan rather than a five year plan. The Bankruptcy Code only requires a three

year plan, and court approval is required for plans of longer duration. 11 U.S.C. § 1322(c) (1995). The requirement that a plan extend for 36 months places a statutory burden on debtors to pay disposable income to the trustee under § 1325(b)(1)(B) as a condition to discharge. This requirement reflects the familiar policy that bankruptcy laws provide debtors relief from indebtedness and will permit rehabilitation if certain minimum conditions are met. In a Chapter 13 case the prime condition is that debtor pays the trustee disposable income for at least 36 months. On the other hand, § 1325(c) protects a debtor from having to make payments for more than 36 months, unless the court consents for cause. Debtors often seek permission to make payments over a period beyond 36 months when they can not meet the required payments over the minimum 36 month term. However, it is extraordinary for a creditor to seek to involuntarily require a debtor to make payments for a period exceeding 36 months. I conclude that such an attempt is generally conceptually inconsistent with § 1325(b) and (c). Therefore, in the usual Chapter 13 case, failure to provide for payments beyond 36 months does not evidence bad faith.

■ However, I recognize that the duration of payments under a proposed plan is relevant to the good faith analysis in those egregious cases where a Chapter 13 debtor seeks to discharge a debt which arose from a willful and malicious injury. In *Matter of Swan*, 98 B.R. 502 (Bankr.D.Neb.1989), I concluded that a debtor could not avoid substantial payment of an assault judgment by proposing a three year plan where a five year plan was possible, and that proposal of a three year plan, in these circumstances, indicated a lack of sincerity on the part of the debtor. *Matter of Swan*, 98 B.R. at 504. Similarly, in the case of *In re LeMaire*, 898 F.2d 1346 (8th Cir.1990), the Court of Appeals for the Eighth Circuit held that the proposed discharge of a judgment for attempted murder in a Chapter 13 plan indicated bad faith. *In re LeMaire*, 898 F.2d at 1353. However, the present case is distinguishable from *Matter of Swan* and *In re LeMaire*.

The present case is similar to *Matter of Swan* in some ways. Indeed, in both cases the debtor converted to Chapter 13 from Chapter 7 after the filing of an adversary proceeding to determine dischargeability of debt, there was an alleged wrongdoing by the debtor of a type that may potentially be nondischargeable in Chapter 7, and the debtor possessed the ability to make payments beyond a three year period. Unlike my previous decision of *Matter of Swan*, where I concluded that a three year plan indicated a lack of good faith, the present case does not involve payment of a previously determined judgment for a physically violent act. In the present case, there has been no determination of liability or judgment reached against the debtor. Furthermore, while the alleged breach of federal and state securities laws is egregious, I conclude that it is not of the same nature as the physically violent acts that were the subject matter of *Matter of Swan* and *In re LeMaire*. Given the lack of a determination of liability, and the nonviolent character of the underlying claim, the present case is distinguishable from *Matter of Swan* and *In re LeMaire*, and a finding of lack of good faith is not warranted by the failure of the plan to provide for payments beyond 36 months.

■ Fourth, the objecting creditors assert that the debtor has acted in bad faith by attempting to discharge a debt that would be nondischargeable in a Chapter 7 bankruptcy. This is a factor that may be weighed in determining if a debtor acted in good faith. *See In re LeMaire, supra; In re Swan, supra*. However, except in egregious situations such as assault and attempted murder, I conclude that a court should not place decisive weight on this factor. Congress has carefully drafted § 523 and § 1328 and additional requirements and qualifications should not be implied by courts. As set forth in the current Bankruptcy Code, a Chapter 13 discharge is broader in scope than a Chapter 7 discharge. Generally, a debtor's election to reap the benefits of Chapter 13 and to incur the attendant burden of making payments for three years does not, of itself, evidence bad faith, and specific cases to the contrary should be strictly limited to their facts. *See*

*In re LeMaire, supra;* and *In re Swan, supra.*

On the facts of the present case, there has been no showing that the unsecured debts are, in fact nondischargeable. The creditors have not established that their debts arose from willful and malicious injury caused by the debtor in soliciting contributions to the companies. Although the objecting creditors have alleged that the debtor made false representations and committed fraud while acting in a fiduciary capacity, these facts have not been proven and remain in dispute. An adversary proceeding has not been completed to determine liability on these issues, and liability is not clear from the facts before this court. Furthermore, even if it were established that the debts in question would be nondischargeable in a Chapter 7 bankruptcy, this does not lead to an automatic finding of bad faith on the part of the debtor. As stated above, the only cases where such factor appears to play a decisive role have generally been cases involving physically violent behavior. *In re LeMaire, supra; In re Swan, supra.* The present case does not involve conduct of that nature. Therefore I conclude that the assertion of nondischargeability in Chapter 7 does not mandate a finding of bad faith on the facts of this case.

As the final basis for the assertion of bad faith on the part of the debtor, the objecting creditors assert that the debtor is simply trying to avoid debt and is not making a sincere effort to reorganize. I find this assertion to be without merit. The debtor is attempting to make some form of payment to unsecured creditors, despite the fact that liability remains disputed. The debtor is committing all disposable income to make payments under the plan and has proposed a three year plan, as required by the Bankruptcy Code.

Notwithstanding my conclusions as to the majority of the arguments of the objecting creditors on the issue of good faith, I conclude that the debtor's failure to disclose his interest in the stock option within his bankruptcy schedules justifies a finding of bad faith. The failure to disclose assets is an extremely serious violation of the Bankruptcy Code. I therefore conclude that the Amended Plan was not filed in good faith, and should not be confirmed. In the context of the matter currently before the court I need not rule on other potential consequences of the failure to disclose.

### BEST INTEREST OF CREDITORS TEST

Under § 1325(a)(4), in order to be confirmed, a plan of reorganization must provide for distribution of property of equal or greater value than the amount unsecured creditors would receive in a liquidation under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1325(a)(4) (1995). The objecting creditors assert that the proposed Chapter 13 plan does not meet the requirement of § 1325(a)(4) because, in a Chapter 7 bankruptcy case the unsecured creditors would be entitled to a pro rata distribution of the proceeds from the exercise of the undisclosed stock option, which is not provided for in the Chapter 13 plan. I conclude that the stock option may have some value despite the restrictions upon transfer of the underlying stock. Furthermore, if the optionor, Trent Tobiason, fails to perform his obligations under the stock option agreement, I conclude that the bankruptcy estate may possess a claim for breach of the Option Agreement against Mr. Tobiason. Therefore, I conclude that the debtor has failed to prove that the best interests of creditors test of § 1325(a)(4) is satisfied in this case. Consequently, the proposed plan will not be confirmed.

For the reasons stated above:

IT IS THEREFORE ORDERED, that the Amended Chapter 13 Plan (Fil. # 87) is not confirmed.

IT IS FURTHER ORDERED, that the debtor shall file an amended plan within twenty-one (21) days hereof, and provide proper notice thereof to all parties-in-interest.