**In the Matter of ELMER'S AUTO PARTS, Debtor.**

**BIRMINGHAM ELECTRIC BATTERY CO., INC., Plaintiff,**

v.

**ELMER'S AUTO PARTS, a Proprietorship owned by Rickey Skinner, Defendant.**

Bankruptcy No. 82–06769.
Adv. No. 83–0953.

United States Bankruptcy Court,
N.D. Alabama, S.D.

Oct. 24, 1983.

Charles W. Allen, Birmingham, Ala., for plaintiff.

R.B. Jones, Birmingham, Ala., for debtor/defendant.

M. Charles Sterne, Trustee.

Jack Rivers, Birmingham, Ala., U.S. Trustee.

ORDER

STEPHEN B. COLEMAN, Bankruptcy Judge.

This case raises an important question in Chapter 11 cases and one that should be settled for the guidance of Debtors and Attorneys alike. Perhaps one of the most serious defects in Code Chapter 11 procedure is the ability and freedom of the Debtor to waste assets and to incur debts as administrative expense with some freedom during the early unsupervised operation of the Chapter 11 case, when he is in the sole control and management of his affairs. Do Debtors incur such obligations with impunity or can they be held responsible despite the discharge?

True, Sections 1102, 1104, 1107, and 1112 are built into Chapter 11 for the protection of creditors. In many cases neither creditors nor their attorneys can effectually discover the losses until it is too late. In some cases the Debtor has incurred substantial post-petition debts to creditors who expect to rely on the priority accorded by Section 507(a)(1) or who do not realize the effect of the pendency of the Chapter 11 case.

Since many Chapter 11 cases end up in liquidation under Chapter 7, the discharge in bankruptcy becomes all important.

An examination of the Code illustrates that such post-petition obligations may be,

"debts" dischargeable in bankruptcy under the Code and may *not* be.[1]

§ 727(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, . . . .

Legislative History . . . . Section 727(b). . . . The provision makes clear that the debtor is discharged from all debts that arose before the date of the order of relief under chapter 7 in addition to any debt which is determined under section 502 as if it were a prepetition claim. Thus, if a case is converted from chapter 11 or chapter 13 to a case under chapter 7, all debts prior to the time of conversion are discharged, in addition to debts determined after the date of conversion of a kind specified in section 502, that are to be determined as prepetition claims. . . .

Section 17(a) of the Bankruptcy Act provided for the release from all *provable debts,* and the Act was clear that the date of bankruptcy was the point of cleavage.

Section 523 contains the following:

A discharge under sections 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— . . . (naming specific circumstances).

1. The new Bankruptcy Rules may leave some questions unanswered.

Whether in a converted case the Debtor shall include administrative expense or requests for "payment of administrative expense" in the schedules or lists of all the Debtor's creditors depends on what construction is put on Bankruptcy Rule 1007, particularly that part of Rule 1007 which reads:

. . . In a case converted from chapter 11 or chapter 13 to a chapter 7 case, the list of all the debtor's creditors, a schedule of assets and liabilities, a statement of financial affairs and a statement of executory contracts shall be filed by the debtor or other person directed by the court, within 15 days after the entry of the order of conversion.

The Bankruptcy Code seems to differentiate between a "debt" for which "claims" must be filed under Section 502 and an "expense" for which a "request for payment" is to be made under Section 503.

The Code does not indicate whether the holders or obligees for administrative expense are to be scheduled or what part they play in the administration and process of the case, except that they are to be paid in the order of first priority under Code Section 507(a). What notice do they get of the conversion of the case? Are they "creditors" as treated by the scheme of the Code?

The Code seems to assume that the Debtor or Trustee will voluntarily and forthwith pay them. How does the Trustee know who they are? Is the Debtor required or entitled to schedule post-petition administrative expense as creditors in the *second* set of schedules required by new Bankruptcy Rule 1007(c) in converted cases?

Does a person holding a right "to request payment" under Section 503 have a right to file a claim? Does he hold a debt within the meaning of Section 727(b)? Can one reason that since under 101(11) a " 'debt' means liability on a claim" and a "claim" means "a right to payment" under 101(4) that a holder of an administrative expense has a right to payment although he is not authorized to file a claim under either Section 502 or Section 503? If he cannot file a claim or demand for payment is his right to request payment discharged?

Rule 1019 adds to the confusion. Rule 1019 must be read in connection with Rule 1007. In fact, the two Rules could very well be consolidated and seem to be somewhat inconsistent and overlapping. However, a close study of Rule 1019 still leaves in doubt whether it is intended to modify or extend the sections of the Code, viz. 501, 502, 503, 101(4), and 101(11) or to change the law of the Code. It seems that if Rule 1019 is to be construed to define administrative expense as "debts" and to place cost of administration on the level with other debts by reference to Rule 3001, it should be more explicit and certain and make clear that it is its purpose to supersede and replace Code provisions. Rule 3001 dealing with proof of claims would ordinarily encompass only pre-petition debts as contemplated in Sections 501, 502, 506, and 507. Does Rule 1019 lead to the conclusion that as defined in Section 503(b) "(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries or commissions for services rendered after the commencement of the case;" created post-petition are not only dischargeable but likewise have no right to priority of payment as administrative expenses?

Does one by placing himself in the status of a "creditor" under Rule 1019 waive and forsake his right of priority under Code Section 507 to "request payment for administrative expense?" Can Rule 1019 give the debtor control of the other person's right? Can Rule 1019 affect constitutional rights created in cases pending on August 1, 1983?

However, Section 727(b) makes clear that the discharge dates from date of conversion. Section 1141 provides for discharge of *debts* in pertinent part under Section (d)(1):

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

The Code defines debt under Section 101(11) as " 'debt' means liability on a claim; . . . " The Code does not define the term "provable debts." In fact Section 3.10 of NORTON BANKRUPTCY LAW & PRACTICE, Vol. 1; Part 3, Page 6, states "The concept of provable claims is eliminated."

The Code does not treat administrative expenses or obligations created post-petition as *debts* and contemplates that no claim is to be filed—rather a "request for payment" is the proper procedure under Section 503.

The Legislative History indicates an intent that "The Rules of Bankruptcy Procedure will specify the time, the form, and the method of such filing." The Rules of Bankruptcy Procedures, adopted by Congress as of August 1, 1983, by inaction, do not reveal compliance with the Legislative Intent as far as the writer can determine. There are no such official forms.

However, the Legislative Intent is clear that debts created by a Debtor-in-possession under Chapter 11 are not provable as "Gap Claims" or on any other theory. They are treated and to be dealt with as administrative expense subject to requests for payment under Section 503.

Are they dischargeable as *debts?*

The possibility of payment out of estate funds exists as priority expenses under Section 507(a)(1) but subject to the application of Section 726(a)(1).

In many cases taxes and administrative expenses even though given priority are not paid, there being no funds or estate out of which payment can be made.

Who is liable for these taxes or obligations and does the Debtor get a discharge from post-petition administrative expense as "debts?"

In the case at bar, the Debtor attempted to operate his auto parts business under Chapter 11 as Debtor-in-possession. The petition was filed November 15, 1982, and was converted to Chapter 7 on April 13, 1983. Birmingham Electric Battery Company sold and delivered goods to Debtor during his Chapter 11 operation which were paid by check at purchase. On April 8, 1983, the Creditor accepted a check for $347.55 for goods purchased, which was returned by the Bank for "insufficient funds." The Creditor has filed a Complaint to determine the dischargeability of the debt asking this Court to declare the debt non-dischargeable under Section 523(c) and 523(a)(2) as a cash transaction by check.

A bank officer testified that there were no funds in the Debtor's account sufficient to cover the check. The attorney for the Creditor insists he is entitled to have an order determining the non-dischargeability of the obligation.

This Court is now called on to test the transaction under Section 523. It is apparent Creditor has a claim from which he would be given a priority under Section 507, and which is non-dischargeable under Section 523(a)(2) if it is a *debt*. If it is not a *debt*, it is not dischargeable anyway. Therefore, it appears that Creditor is entitled to an order so declaring such right of priority of payment but finding there are no funds available, and Creditor is free to proceed against the Debtor despite the Debtor's discharge in bankruptcy in any Court having jurisdiction; provided further, that such leave to proceed is stayed so long as Debtor pays $25 per month until the debt is paid in full and Creditor is enjoined from attempting to collect the check by either civil or criminal process.