**In re Bradly R. TOMS and Pamela Toms, Debtors.**

**Bankruptcy No. 97–30177F.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Jan. 28, 1999.

Jonathan Krinick, Sagot, Jennings & Sigmond, Philadelphia, PA, for Debtors.

Marvin Krasny, Philadelphia, PA, trustee.

## MEMORANDUM

BRUCE I. FOX, Bankruptcy Judge.

The law firm of Koresko & Associates, P.C., filed an application for approval of counsel fees in the amount of $9,018.75 and reimbursement of expenses in the amount of $306.27, based upon 11 U.S.C. § 330(a). The services rendered and costs incurred arose during the debtors' chapter 13 case, prior to its conversion to chapter 7. The debtors have filed a timely objection thereto, arguing that the services rendered were unnecessary.[1] In addition to objecting to counsel's application, the debtors seek relief under 11 U.S.C. § 329(b) contending that all but $500.00 (plus the $160.00 filing fee) of their retainer is excessive and should be returned to them.

While a considerable evidentiary record has been made, I need not detail all of the facts presented, in light of my holding that only a portion of the dispute raised by the parties is now properly before me.

### I.

On August 20, 1997, the debtors, Pamela and Bradley Toms, filed a voluntary petition in bankruptcy under chapter 13. Before this filing, they had retained the services of Koresko & Associates.[2] Mrs. Toms testified that they sought representation for a bankruptcy filing because they were having problems paying their credit card and utility bills.

They met with attorney John J. Koresko, V, who reviewed certain financial information with them. At the time of this interview in June 1997, the debtors had two mortgages on their home as well as a secured automobile loan, were obligated on a car lease, and had various unsecured debts. Based upon information they provided, Mr. Koresko determined that their income was insufficient to meet all of their expenses. The debtors were, however, current with both mortgage obligations and with their two automobile debts.

Mr. Koresko suggested at this initial interview that the debtors have their home appraised. He explained to them that if the value of their home was approximately $125,-000.00 (or less), he was prepared to recommend to them that they file for chapter 13 relief, rather than a chapter 7 liquidation. This recommendation was based upon his belief that the debtors could "cram down," or bifurcate, the second mortgage obligation if the value of the debtors' home did not exceed the above-mentioned figure.

The debtors understood that if they were to engage Koresko & Associates for chapter 7 representation, the fee for such service would be $750.00. If they engaged counsel for chapter 13 representation, the fee would be greater. After they obtained an appraisal of the value of their home, they signed a fee agreement for chapter 13 representation on July 15, 1997. Exs. A–2, A–6.

The fee agreement called for the debtors to pay counsel for services rendered at an

---

1. The original hearing on this application was postponed at the request of the applicant, which was consented to by the objectors.

2. Actually, the debtors' bankruptcy petition states that their counsel is the firm of Baldwin Clark Renner & Koresko. Ex. A–3. The applicant asserts, however, that it succeeded that other firm, and the debtors do not question this. Further, the engagement agreement refers to Koresko & Associates.

hourly rate from $185.00 to $225.00 per hour, depending upon which attorney provided the service. The debtors were to be "billed periodically" and were to pay all bills within 30 days of receipt or interest would accrue at 18% per annum. Ex. A–1, at 1. The debtors paid a retainer of $1,500.00 plus the $160.00 filing fee which was to "be deemed earned when paid" and not subject to refund. Ex. A–2, at 1.

Appended to the fee agreement, Ex. A–2, was a "list of standard services." Underneath the heading of the list was the phrase "Chapter 13 case—$1,500.00," followed by a list of eight types of services.

After filing their chapter 13 petition, the debtors proposed a chapter 13 plan which treated the claim of the second mortgagee as partially unsecured. Ex. A–3. They also filed an objection to that creditor's secured proof of claim, which objection sought to avoid a portion of the mortgage lien based upon section 506(d) of the Bankruptcy Code. After a trial on that objection, I concluded that section 1322(b)(2) precluded these debtors from bifurcating the secured claim of the second mortgagee. Ex. A–10 (Memorandum and Order dated April 7, 1998); *see Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

Prior to my issuance of the memorandum and order of April 7, 1998, and during oral argument on the debtors' objection to the allowance of the secured claim of the second mortgagee, I notified the parties that the mortgagee's position was more persuasive. Mr. Koresko thereupon sent a letter dated April 1, 1998 to his clients informing them of my intent to overrule their attempt to bifurcate the secured claim of the second mortgagee. Ex. A–8. This letter, *inter alia,* set out the various bankruptcy options for these debtors in light of this ruling as follows:

If you want to stay in the house you must do one of the following:

1. File a revised Chapter 13 plan immediately showing current payments to [the second mortgagee] and satisfaction of the past due payments; or

2. Dismiss your present Chapter 13 case and re-file at a later date; or

3. *Convert your case to Chapter 7 or refile under Chapter 7 and try to deal with [the second mortgagee] outside of a plan.*

Ex. A–8, at 2 (emphasis added).

Thereafter, Koresko & Associates sent the debtors the instant fee application. Counsel also filed an amended chapter 13 plan (not signed by the debtors) which provided for payment of this fee in full. Ex. T–1. Before filing this fee request, counsel did not send any billings to the debtors. Further, counsel had estimated that it would charge the debtors "at least an additional $2,500 to litigate" the section 506(d) bifurcation issue with the second mortgagee. Ex. A–8.

The debtors responded to their receipt of this fee application and proposed amended plan by firing Koresko & Associates and engaging new counsel. New counsel later advised them to convert their bankruptcy case to one proceeding under chapter 7, which they did.

### II.

Before I can address the merits of this application and the debtors' objection thereto, I must consider the debtors' standing in this dispute. Although the applicant does not raise this issue, questions of standing must be considered sua sponte, as it is akin to subject matter jurisdiction. *See, e.g., In re Weaver,* 632 F.2d 461, 462 n. 6 (5th Cir.1980) (the issue of standing may be raised *sua sponte* ); *see generally FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

### A.

There are two components to this dispute. First, Koresko & Associates requests that I fix reasonable compensation (and reimbursement of expenses) under 11 U.S.C. § 330(a) for those services it rendered to the debtors during the chapter 13 portion of this case. Second, the debtors request that I determine that they made an "excessive" payment to former counsel and direct the return of such excessive payment to them, by virtue of section 329(b).

As to the second issue, the debtors clearly have standing to seek the return of funds to

themselves, and former counsel has standing to oppose such a return. Such a dispute directly affects the pecuniary rights of these two parties. *See In re Schutte*, 112 B.R. 973 (Bankr.E.D.Mo.1990); *see generally Travelers Insurance Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737 (3d Cir.1995). A more detailed analysis applies, however, to the debtors' standing in opposition to former counsel's request that I fix its reasonable compensation under section 330(a).

### B.

■ Shortly after this fee application was filed, the debtors terminated their engagement of Koresko & Associates and retained new counsel. On August 20, 1998, the debtors converted their bankruptcy case to one under chapter 7, pursuant to 11 U.S.C. § 1307(a). Generally, in a chapter 7 case, only a chapter 7 trustee may object to proofs of claim filed. *See, e.g., Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir.1985); *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 706–07 (8th Cir.1979); *In re Nefferdorf*, 71 B.R. 217, 219 (E.D.Pa.1984). The allowance or disallowance of a claim affects the pecuniary rights of creditors, in that the outcome may affect the distributions made to creditors. Therefore, typically, standing to object to claims in a chapter 7 case is reserved to the chapter 7 trustee, who has the statutory duty to review and object to claims "if a purpose would be served." 11 U.S.C. § 704(5); *see* Advisory Committee Note, Fed.R.Bankr.P. 3007 (1983).[3] As recently discussed by the Seventh Circuit Court of Appeals in *In re Cult Awareness Network, Inc.*, 151 F.3d 605 (7th Cir.1998):

> Bankruptcy standing is narrower than Article III standing ... To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order.... Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the es-

tate's assets are disbursed by the trustee, no assets will revert to the debtor.

*Id.*, at 607.

Before I discuss the two exceptions to the general principle that a chapter 7 debtor has no standing to object to a proof of claim filed by a creditor, I recognize that Koresko & Associates have filed an "application for approval of counsel fee" rather than a document identified as a "proof of claim." Nevertheless (as will be addressed in more detail below), Fed.R.Bankr.P. 1019(5) provides that a chapter 13 debtor shall "file a schedule of unpaid debts incurred after the commencement of a chapter 13 case...." Rule 1019(6) further directs the clerk of court to notify those "entities" listed on the schedule of unpaid debts so that they may file timely proofs of claim. Therefore, it is appropriate to view the instant application in the context of a claim being asserted in this chapter 7 case. *See generally In re Benjamin Coal Co.*, 978 F.2d 823, 827 n. 1 (3d Cir.1992) (citing *In re Johnson*, 901 F.2d 513, 520 (6th Cir.1990) for the requirement that pre-conversion administrative claims "are subject to the filing of proof of claim requirements").

■ Two exceptions exist to the general principle that chapter 7 debtors have no standing to object to bankruptcy claims. First, a debtor has standing to object if "a debtor might be able to satisfy all debts with the assets from the estate and be left with some amount remaining. If the debtor can show a reasonable possibility of a surplus after satisfying all debts, then the debtor has shown a pecuniary interest and has standing to object to a" claim asserted in his or her bankruptcy case. *In re Cult Awareness Network, Inc.*, 151 F.3d at 608; *accord, e.g., Willemain v. Kivitz*, 764 F.2d at 1022.

If there might be a surplus in non-exempt assets which would be returned to the debtor after creditors were paid in full, then the chapter 7 debtor has a pecuniary interest in the outcome of any claims objection. In that circumstance, were the challenged claim disallowed or reduced, then the amount of the surplus payable to the debtor would increase.

---

3. Indeed, Fed.R.Bankr.P. 2002(e) assumes that any objection to a proof of claim by the chapter 7 trustee is pointless in a no-asset case, since there would be no distribution to creditors. This procedural rule thus provides that no proofs of claim need be filed.

*See In re Bobroff,* 1990 WL 178557, \*3 (E.D.Pa.1990).

The debtors asserted in their bankruptcy schedules, however, that this chapter 7 case will be considered a "no-asset" case by the chapter 7 trustee. Indeed, on October 1, 1998, the chapter 7 trustee filed his "no-asset" report.[4] That is, the chapter 7 trustee agreed with the debtors that they hold no non-exempt assets which can be liquidated and distributed to their unsecured creditors by the chapter 7 trustee.

Since there are no assets for the trustee to administer, there is no purpose to creditors filing any proofs of claim. *See* Fed. R.Bankr.P. 2002(e) (creditors need not file any proofs of claim in a "no-asset" chapter 7 liquidation case unless assets are later discovered and the creditors are so informed); Fed.R.Bankr.P. 3002(c)(5) (there is no bar date for filing proofs of claim in no-asset chapter 7 cases until the clerk of court notifies creditors "that payment of a dividend appears possible"); *see generally Judd v. Wolfe,* 78 F.3d 110, 115 (3d Cir.1996).

Here, there is has been no showing of any likelihood that there will be a surplus in this chapter 7 case which would be payable to these debtors under section 726(6). On the contrary, the debtors' bankruptcy schedules, Ex. A–3, demonstrate that there will be no dividends at all payable to their unsecured creditors; moreover, the chapter 7 trustee has agreed with this assessment. Thus, this exception to the lack of standing of chapter 7 debtors is not applicable. *See In re Bobroff.*[5]

### C.

■ A second exception to the principle that chapter 7 debtors have no standing to object to claims exists for those claims which are not discharged by virtue of section 727.

A chapter 7 debtor's lack of standing to object to a claim is premised upon the notion that the allowance of the claim will have no affect on the debtor's rights; this notion, in turn, is premised upon the dischargeability of that claim. If the challenged claim is dischargeable, then the debtor will bear no legal responsibility for payment of the claim once a discharge order is entered, regardless of its allowance or disallowance. Absent a surplus, the amount of distribution made to that creditor does not affect the debtor. Any reduction in distribution to any claimant would result only in an increase in distributions made to allowed claimants, not to the debtor.

Conversely, if there were a claim asserted in a chapter 7 case which would not be discharged and which is not likely to be paid in full by the trustee, then the chapter 7 debtor will be legally responsible for payment of any remaining claim after the bankruptcy case is concluded. Due to this continuing obligation, the debtor has a pecuniary interest in the disallowance of the claim. Were the claim disallowed or reduced in amount, the debtor's continuing liability after bankruptcy could be affected.

In this chapter 7 case, if the debtors' obligation to Koresko & Associates is dischargeable, then the allowance of this claim under section 330(a) is irrelevant to these debtors. Alternatively, if an allowance of attorney's fees to former counsel for the debtors would not be discharged in this chapter 7 case, then the debtors would have standing to object to this fee application. *Accord In re Bobroff,*

---

4. I take judicial notice of the dockets of the court and of their contents. Fed.R.Evid. 201; *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *In re Edwards,* 228 B.R. 552, 554 n. 1 (Bankr.E.D.Pa. 1998) (Dec. 15, 1998, Sigmund, B.J.); *see generally In re Indian Palms Associates, Ltd.,* 61 F.3d 197 (3d Cir.1995).

5. I appreciate that Koresko & Associates has filed an objection to the debtors' exemption claims on October 30, 1998. (Docket entry # 98.) If such objections were sustained, and if the disallowance of the exemptions could result in a surplus under section 726, it is arguable that

the debtors might have standing to assert an objection to the instant claim. Here, though, I have no basis to conclude this eventuality has any likelihood of occurrence.

Schedule C (Ex. A–3) claims an exemption in property totaling $5,213.00 (plus it refers to an interest in a "defined contribution plan" of $20,000.00). (Little of the section 522(d)(5) wildcard exemption is utilized.) Unsecured claims—exclusive of the claim of Koresko & Associates—total $30,182.76. Schedule F, Ex. A–3. Therefore, even if the exemption claims were disallowed, it would not appear from this record that any surplus could possibly be created.

1990 WL 178557 at *4; *In re Towery,* 53 B.R. 76 (Bankr.W.D.Ky.1985).

■ Interestingly, the debtors argue that any award of counsel fees for services rendered in a chapter 13 case is discharged when the case is converted to chapter 7. Thus, indirectly, the debtors argue against their own standing to object to this fee application. Koresko & Associates strongly argues that the amount it claims is still owing (beyond the sum paid as a prepetition retainer) would not be discharged at the conclusion of this chapter 7 case. For the following reasons, I find that pre-conversion chapter 13 administrative claims are dischargeable after conversion to chapter 7.

### III.

I begin with the language of 11 U.S.C. § 348(d), which states:

A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

■ Accordingly, this subsection provides, in general, that claims which arise after a bankruptcy case is commenced, but before it is converted to chapter 7, are treated as though they were prepetition claims. *See, e.g., In re Benjamin Coal Co.,* 978 F.2d at 826–27; *In re Maready,* 122 B.R. 378, 381 n. 2 (9th Cir. BAP 1991). Section 349(d), however, expressly excludes from such treatment all claims arising under section 503(b). *Accord, e.g., In re Benjamin Coal Co.,* 978 F.2d at 826–27.

■ Section 503(b) addresses administrative claims. Included within the definition of administrative claims are allowances made for counsel fees under 11 U.S.C. § 330(a). 11 U.S.C. § 503(b)(2); *see, e.g., In re Kaleidoscope of High Point, Inc.,* 56 B.R. 562, 564 (Bankr.M.D.N.C.1986). In other words, administrative claims (including awards of counsel fees) are not treated as claims arising prepetition—that is, before the filing of the bankruptcy petition—upon conversion of the case to one under chapter 7. *See, e.g., In re Benjamin Coal Co.,* 978 F.2d at 827; *In re Johnson,* 901 F.2d at 520.

As I noted earlier, Koresko & Associates seeks an award of compensation for services rendered to the debtors in their chapter 13 case pursuant to section 330(a). To the extent of such an award, the exception for administrative expenses found in section 349(d) would be applicable.[6]

I need not resolve that dispute because Koresko & Associates is seeking compensation as counsel to chapter 13 debtors, not chapter 7 debtors. After Congress amended section 330 in 1994, section 330(a)(4)(B) now provides:

In a ... chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

While there may be a dispute regarding a chapter 7 debtor's counsel's ability to seek compensation under section 330(a) in light of changes made to the statute in 1994, the clear language of section 330(a)(4)(B) demonstrates congressional intent to permit such an allowance to be made to chapter 13 debtor's counsel. *Accord In re Lee,* 209 B.R. 708, 710 (Bankr.N.D.Ill. 1997); *In re Friedland,* 182 B.R. at 579; *see*

---

**6.** Section 330 was amended by 224(b) of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394. It was enacted into law on October 22, 1994. One of the changes made by section 224(b) was the deletion of the words "the debtor's attorney" from subsection 330(a) and what is now section 330(a)(1). Courts are divided in their opinions on the effect of this deletion. Some have construed this amendment to preclude any award of compensation to debtor's counsel in chapter 7 cases from estate property. *See, e.g., In re Friedland,* 182 B.R. 576 (Bankr. D.Colo.1995) (1994 amendments did not provide for allowance of compensation out of estate funds to counsel for chapter 7 debtors). Others have held that Congress did not intend by this amendment to alter chapter 7 debtor's counsel's longstanding right to seek compensation from the estate in appropriate circumstances. *See, e.g., In re Miller,* 211 B.R. 399 (Bankr.D.Kan. 1997); *In re Grossman,* 1996 WL 389324 (Bankr. E.D.Pa.1996); *see also* L. King, 3 *Collier on Bankruptcy,* ¶ 330.LH[5], at 330–76 to 330–77 (15th ed. rev.1998).

■ Some courts have suggested that the scope of the chapter 7 discharge is limited to prepetition claims. *See, e.g., In re Affeldt,* 60 F.3d 1292, 1294 (8th Cir.1995) ("The discharge entered in Affeldt's Chapter 7 bankruptcy discharges all of Affeldt's prepetition debts"); *Matter of Christopher,* 28 F.3d 512, 515 (5th Cir.1994) ("a Chapter 7 discharge deals only with debts incurred prior to the filing of the petition"). While such a statement is accurate in the large majority of cases, and while it is correct that any allowance of professional fees to Koresko & Associates in this dispute would not create any prepetition claim due to section 348(d), the language of section 727(b), which addresses the scope of the chapter 7 discharge, extends beyond prepetition claims. This subsection provides:

> (b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose *before the date of the order for relief under this chapter,* and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

(emphasis added).

In other words, entry of a discharge order in a chapter 7 case discharges all debts not made non-dischargeable by section 523(a) and which arose before the date of the "order for relief." In a voluntary bankruptcy case, section 301 states that the "order for relief" is the date that the bankruptcy petition is filed. *See In re Hudson,* 859 F.2d 1418, 1425 (9th Cir.1988). Accordingly, in a bankruptcy case which commences with the filing of a voluntary chapter 7 petition, section 727(b) would render dischargeable only those debts which were incurred prepetition.

This is not true when the bankruptcy petition is filed under one chapter and later is converted to chapter 7. The date of "the order for relief" under chapter 7, in a converted case, refers to the date of conversion. The Bankruptcy Code makes this clear:

> (b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), *727(b),* 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.

11 U.S.C. § 348(b) (emphasis added); *In re State Airlines, Inc.,* 873 F.2d 264, 268–69 (11th Cir.1989); *In re Morris,* 155 B.R. 422, 426 (Bankr.W.D.Tex.1993) ("As provided in section 348(b), in a case which has been converted pursuant ... [from chapter 11], 'the order for relief under this chapter' is the date of conversion to the Chapter 7 case").

Thus, when a bankruptcy case is converted to chapter 7 from chapters 11, 12 or 13, section 727(b) renders dischargeable all debts which arose before the date of conversion, unless those debts are made non-dischargeable by section 523(a). *Accord Matter of Pavlovich,* 952 F.2d 114, 117 (5th Cir. 1992):

> For purposes of the dischargeability of debts, the conversion becomes the order for relief in the converted proceeding. 11 U.S.C. § 348(b). Thus, all debts that arose before the date of conversion are discharged....

*See, e.g., In re Zelis,* 66 F.3d 205, 209 (9th Cir.1995); *In re Chesher,* 1996 WL 745310 (Bankr.W.D.Tenn.1996); *Matter of Elmer's Auto Parts,* 34 B.R. 63 (Bankr.N.D.Ala.1983).

In the context of this dispute, were Koresko & Associates to receive an allowance under section 330(a), this award would be an administrative claim in the debtors' chapter 13 case. By virtue of section 348(d), the law firm would still hold an administrative claim upon conversion of the case to chapter 7, entitled to a priority of payment from the

---

*generally In re Courtois,* 222 B.R. 491 (Bankr. D.Md.1998).

In addition, to the extent that the debtors asserted at the hearing that the 1994 amendments to section 330(a) precluded any allowance of the instant fee application, they have withdrawn this position in their posthearing memorandum, at 3–4.

trustee under sections 507(a)(1) and 726(a)(1), because it does not become a pre-petition claim.[7] Despite its priority position, however, it is subject to discharge under section 727(b), because it is a claim which arose before the conversion of the case to chapter 7 as defined by section 348(b). *Accord In re Ramaker*, 117 B.R. 959, 962–63 (Bankr.N.D.Iowa 1990):

> The court concludes that the claim of White is an administrative expense under 11 U.S.C. § 503(b). Having concluded that White's claim is an administrative claim arising in the chapter 11 case, the court must now reach the discharge issue. I do not agree that White's claim is not discharged in this case. The court does not believe that § 348(d) was intended to eliminate from the effect of the discharge those claims arising after the filing of the chapter 11 case but before its conversion to chapter 7. Section 348(d) deals with the treatment of claims. It should be construed to provide that non-administrative claims arising in a chapter 11, upon conversion, are treated as prepetition debts. Chapter 11 administrative claims are provided for differently. They retain their priority status and are paid ahead of unsecured creditors in the case. They are inferior, however, to chapter 7 administrative expenses. 11 U.S.C. § 726(a)(1) and § 726(b). The latter provides that in a case converted from chapter 11 to chapter 7, an allowed administrative expense claim incurred during the chapter 7 case has priority over an allowed administrative expense incurred under any other chapter before the conversion. . . .
> 
> Section 727(b), on the other hand, deals with the discharge of these chapter 11 administrative claims. Read in conjunc-

tion with § 348(a) and (b), it provides that unless a debt is excepted from discharge under § 523, a discharge under § 727(a) discharges the debtor from all debts "that arose before the date of the order for relief under this chapter." That phrase is given meaning by 11 U.S.C. § 348(b) which states in pertinent part that in § 727(b), " '[t]he order for relief under this chapter' in a chapter to which a case has been converted under § . . . 1112 . . . of this title means the conversion of such case to such chapter." Thus, § 727(b) specifically discharges the debtor from all debts arising before the date of conversion. The only exceptions are those provided under 11 U.S.C. § 523. White has raised no § 523 grounds for denying Ramakers a discharge of its administrative claim arising during the chapter 11 case.

(citations omitted) (discussing the effect of conversion from chapter 11 to chapter 7 on a chapter 11 administrative claim); *accord* L. King, 3 *Collier on Bankruptcy*, ¶ 348.05[1], at 348–13 (15th ed. rev.1998) (footnotes omitted):

> Claims for administrative expenses as specified by section 503(b), however, are expressly excepted from the operation of section 348(d). *Although they are treated as prepetition claims for most purposes, including discharge*, these administrative expense claims continue to have priority in distribution as specified by section 507(a).

(emphasis added); *see also In re Benjamin Coal Co.* (language of section 1141(d)(1)(A) rendered all claims which arose before the date of the confirmation order, including chapter 11 administrative claims, dischargeable).[8]

---

7. By virtue of section 726(b), a chapter 13 administrative claim has priority over other unsecured claims in the chapter 7 case, but not priority over chapter 7 administrative expenses. *See, e.g., In re Johnson*, 901 F.2d 513 (6th Cir.1990); *In re Lazar*, 207 B.R. 668 (Bankr.C.D.Cal.1997); *see generally* 6 L. King, *Collier on Bankruptcy*, ¶ 726.03 at 726–14 (15th ed. rev.1998).

8. Koresko & Associates argues unpersuasively that it holds no "debt" which may be discharged until its fee application is allowed by this court. This position overlooks the definition of a "debt" under section 101(12), which incorporates the

definition of a "claim" under section 101(5). A claim is broadly defined to include "contingent," "unliquidated," "unmatured," "equitable" and even "disputed" rights to payment. Once it provided the services, former counsel held a "claim," even prior to the entry of any court order. *See, e.g., In re Hines*, 147 F.3d 1185 (9th Cir.1998) (unapproved fees were a bankruptcy claim); *In re Biggar*, 110 F.3d 685 (9th Cir.1997) (attorney's fees incurred prior to the order for relief were a claim in bankruptcy even though such fees were subject to court review under section 329).

Any doubt that Congress intended the literal effect of this statutory language is dispelled by the legislative history surrounding the enactment of subsection 727(b):

> Section 727(b) of the House amendment adopts a similar provision contained in the Senate amendment modifying the effect of discharge. The provision makes clear that the debtor is discharged from all debts that arose before the date of the order from relief under chapter 7.... *Thus, if a case is converted from chapter 11 or chapter 13 to a case under chapter 7, all debts prior to the time of conversion are discharged....* This modification is particularly important with respect to an individual debtor who files a petition under chapter 11 or 13 of title 11 if the case is converted to chapter 7. The logical result of this provision is to equate the result that obtains whether the case is converted from another chapter to chapter 7, or whether the other chapter proceeding is dismissed and [a] new case is commenced by filing a petition under chapter 7.

124 Cong.Rec. H11098 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17415 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini) (emphasis added) [9]; *see also* L. King, 6 *Collier on Bankruptcy,* ¶ 727.13 (15th ed. rev.1998); Cowans, 1 *Bankruptcy Law and Practice,* § 5.68, at 765 n. 3 (6th ed.1994).

Furthermore, the procedural rules recognize that pre-conversion administrative claims, albeit priority claims, will be treated as dischargeable claims in the converted chapter 7 case.

As I mentioned earlier, Fed.R.Bankr.P. 1019(5) requires that a debtor in a case converted from chapter 13 to chapter 7 file a schedule of postpetition, preconversion claims—which will often be administrative claims within the meaning of section 503—within 15 days from the order for conversion. Rule 1019(6) then directs these claimants to file timely proofs of claim under Rules 3001 and 3002 (to the extent the case is an asset case with distribution to be made). *See In re Benjamin Coal Co.,* 978 F.2d at 827 n. 1.

This procedural obligation on the part of pre-conversion claimants should be contrasted with the general requirement that administrative claimants under section 503(a) simply file a "request" for payment. *See, e.g., In re Polysat, Inc.,* 152 B.R. 886 (Bankr.E.D.Pa. 1993). Unlike Rule 3001(a), which establishes an official format for a proof of claim, the "Federal Rules of Bankruptcy Procedure do not set forth an official form for the filing of a request for payment of an administrative expense." *See* L. King, 4 *Collier on Bankruptcy,* ¶ 503.02[1], at 503–8 (15th ed. rev. 1998). Indeed, administrative claimants are free to file "motions" seeking payment, rather than proofs of claim. *See Matter of Village Mobile Homes, Inc.,* 947 F.2d 1282, 1283 (5th Cir.1991) ("Because the motion procedure was appropriate for the administrative priority claim for past due rents we may and do affirm that portion of the judgment"); *In re Englewood Community Hosp. Corp.,* 117 B.R. 352, 359 (Bankr.N.D.Ill.1990) ("The Court finds that PCA's motion constitutes a 'request for payment' pursuant to section 503(a) and is procedurally sufficient to be decided as a contested matter under Bankruptcy Rule 9014").

---

Those entities holding administrative claims may not be "creditors" under section 101(10), absent conversion, because their claims may arise "after the order for relief." *See, e.g., In re Polysat,* 152 B.R. 886, 895 (Bankr.E.D.Pa.1993). Nevertheless, they would still hold a "claim," as that definition does not refer to any particular time period.

Moreover, former counsel overlooks that all administrative expense claims must be allowed upon request under section 503(a) before they may be paid. The allowance process may take into account—as would the allowance of attorney's fees—the benefit derived by the bankruptcy estate. *See, e.g., In re Allen Care Centers, Inc.,* 96 F.3d 1328, 1330 (9th Cir.1996). The implication

of former counsel's argument is that no administrative expense claim is dischargeable until allowed, because it is not a debt. In construing provisions such as section 1141(d) and 727(b), no court has reached such a conclusion. *See, e.g., In re Benjamin Coal Co.*

**9.** The remarks of Representative Edwards and Senator DeConcini, which were made just prior to the enactment of the Code, have been viewed as "persuasive evidence" of congressional intent due to the status of these elected officials as floor managers of the bankruptcy legislation. *Begier v. I.R.S.,* 496 U.S. 53, 64 n. 5, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

In addition, the incorporation of Rule 3002 by Rule 1019(6) makes relevant the Rule 3002(c) bar date to pre-conversion claims. In contrast, there is no bar date for requests for administrative claims unless so ordered by the court. *See, e.g., In re Polysat,* 152 B.R. at 895–96.

Taken together, the express language of the relevant statutory provisions, the persuasive legislative history, and the procedural requirement imposed upon all pre-conversion claimants make clear that Congress intended to render such claims dischargeable, even those granted priority as chapter 13 administrative claims.[10]

## IV.

To the extent that Koresko & Associates holds a dischargeable claim, these chapter 7 debtors have no standing to object to its allowance. In addition, as this is a no-asset case, there would be no purpose to my fixing any allowance of its claim. *See In re Radco Merchandising Services, Inc.,* 111 B.R. 684, 687 (N.D.Ill.1990); *In re Malone,* 74 B.R. 315, 320–21 (Bankr.E.D.Pa.1987).[11] To avoid this result, former counsel raises two

grounds in opposition to the dischargeability of its claim which should be addressed.

### A.

First, the dischargeability of a pre-conversion administrative claim relies upon section 348(b), which fixes the date of the "order for relief" in section 727(b) as the date of conversion. Section 348(b) allows a court, however, to choose a different date from the date of conversion as the operative date for the order for relief, but only "for cause" shown. *See In re Morris.* Koresko & Associates suggests that cause exists in this instance for the date of the order for relief to remain the original petition date rather than the date of conversion. If so, then its postpetition, pre-conversion claim would arise after the order for relief and not be dischargeable under section 727(b).

It is the burden of the applicant to demonstrate "cause" for relief under section 348(b). *See id.; see generally Matter of Woodbrook Associates,* 19 F.3d 312, 317 (7th Cir.1994) (party seeking to establish the existence of "cause" under section 1112(b) bears the burden of persuasion). In this instance, it has not met that evidentiary burden.

---

10. I appreciate that this statutory analysis is not applicable when a case is converted from chapter 7 to another chapter. *See generally In re Bottone,* 226 B.R. 290 (Bankr.D.Mass.1998) (analyzing the effect of conversion from chapter 7 to chapter 13). For example, section 348(d) only applies when bankruptcy cases are converted to chapter 7, not from chapter 7. *See id.,* at 294. Furthermore, the requirement in reorganization cases that plans provide for the payment of administrative claims in full affects the practical implications of conversion from chapter 7 on pre-conversion administrative claimants.

11. *In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 841 (3d Cir.1994) instructs that bankruptcy judges have the duty to review bankruptcy fee applications under section 330(a), even in the absence of any objections thereto. This duty is "derive[d] from the court's inherent obligation to monitor the debtor's estate and to serve the public interest." *Id.* Where, as in this instance, the allowance of a fee application would make no difference to the debtor's estate—because it would be a dischargeable claim in a no-asset bankruptcy case—the bases for such a duty do not apply. Since the evidentiary record in this contested matter reflects that priority claims are unlikely to be paid at all, the present dispute is

akin to a conflict between a chapter 7 debtor and his former counsel over a bill for prepetition services. A bankruptcy court need not resolve that conflict in a no-asset chapter 7 case. (Indeed, the provision of Rule 1019 calling for all pre-conversion claimants to file proofs of claim likens the instant dispute to an objection to a proof of claim.)

Such a conclusion will be tempered in this instance in two respects. First, I will address the reasonableness of the payment already made by the debtors to their counsel under section 329(b). Second, as will be discussed below, Koresko & Associates has filed a complaint seeking to determine the non-dischargeability of its claim under section 523(a); it has also raised a challenge to the debtors' exemption claim. Although I must presently decline, for reasons of lack of standing, to review the instant fee request, I shall reserve the right to do so at a later date if this claimant prevails in its non-dischargeability action, or if it prevails in its exemption claim and the trustee proposes to make distribution to those holding allowed claims. *Cf.* L. King, 3 *Collier on Bankruptcy,* ¶ 331.04[1] (15th ed. rev.1998) (award of attorney's fees under section 331 is subject to modification based upon circumstances which may later arise in the bankruptcy case).

As mentioned earlier, the debtors contend that they sought bankruptcy counsel only to file a chapter 7 liquidation case. At the time of their filing, they owned a home encumbered by two mortgage liens. Both mortgage obligations were current, as were their car lease payments. Mr. Koresko, upon a review of their financial circumstances, advised them to file a chapter 13 petition, based upon his belief that the second mortgage obligation might be avoided, in part, pursuant to 11 U.S.C. § 506(d). I concluded, however, that the anti-modification provisions of section 1322(b) prevented any bifurcation of the mortgagee's claim. When the applicant learned of my ruling, he advised the debtors of their viable options; included among them was the possibility of converting the chapter 13 case to one under chapter 7. Ex. A–8. Shortly thereafter, former counsel filed its fee request and a chapter 13 plan providing for payment of this fee. The debtors decided to engage other counsel and to convert the case to chapter 7.

▆▆▆▆ The term "cause" is not defined in the Bankruptcy Code. The Third Circuit Court of Appeals has explained that this absence "leav[es] courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *In re Wilson,* 116 F.3d 87, 90 (3d Cir.1997). In *In re Morris*—which is the only reported decision to discuss the concept of cause in the context of section 348(b)—the bankruptcy court equated "cause" to a showing of "bad faith." *Id.,* at 426. It framed the issue thusly: "The question is whether the [two] conversions were in bad faith and for the purpose of discharging the post-petition gambling debts." *Id.,* at 430. I agree that a showing of bad faith on the part of chapter 13 debtors in converting a case to chapter 7 could constitute cause to direct that the conversion date not be viewed as date of the order for relief. Nonetheless, the circumstances surrounding the *Morris* decision differ markedly from those present in this dispute.

In *Morris,* the debtors initially filed a voluntary chapter 7 petition. Two weeks later, the husband/debtor traveled to Las Vegas and incurred more than $100,000.00 in unse-

cured gambling obligations over a two day period. *Id.,* at 430. By virtue of section 726(b), this postpetition gambling obligation would not be discharged in their chapter 7 case. Two weeks after incurring this obligation, the debtors converted their case to one under chapter 11. *Id.,* at 430. Had the debtor been able to confirm a chapter 11 plan, the postpetition gambling debt would have been discharged under section 1141(d) as a postpetition, pre-confirmation claim. *See generally In re Benjamin Coal Co.*

The bankruptcy court concluded that "the primary motive behind ... [this conversion to chapter 11] was to somehow obtain discharge of the post-petition gambling debts." *In re Morris,* 155 B.R. at 430. In addition, the court concluded that the debtors had little or no chance of reorganizing in chapter 11 and never even filed a proposed plan. *Id.,* at 430–31. After remaining in chapter 11 for four months, the debtors then converted their case back to chapter 7, whereupon they argued that the postpetition gambling debt should be discharged under section 726(b) as a preconversion obligation. *Id.*

In denying the debtors this relief, the *Morris* court found that there was "cause" to treat the order for relief in the converted chapter 7 case as the date the original chapter 7 petition was filed. *Id.,* at 431. It found that the two conversions were done in bad faith, in that they were designed solely cause the discharge of a postpetition obligation, without any likelihood of reorganization. *Id.*

Koresko & Associates argues that the reasoning of the *Morris* court applies here. Former counsel contends that the instant debtors acted in bad faith in converting their chapter 13 case to chapter 7, because their sole intent in doing so was to discharge their obligation for postpetition counsel fees. *See* Koresko Memorandum, at 25–26. The debtors counter that they converted their bankruptcy case to one under chapter 7 "to effectuate the purpose for which the Debtors sought bankruptcy relief—the discharge of unsecured credit card debt which they could no longer pay." In other words, the debtors dispute that they were motivated solely by former counsel's claim. Debtors' Memorandum, at 9. In support, they note that before

converting their case, the debtors paid the second mortgagee any arrearage which had accrued while their case was pending in chapter 13. They also argue that they could have dismissed their chapter 13 bankruptcy case, *see* 11 U.S.C. § 1307(b), and then could have filed a chapter 7 case which would have rendered their debt to former counsel a dischargeable prepetition claim without any assertion of priority.

Upon review of the evidentiary record, I agree with the debtors that former counsel has not met its burden of persuasion on this point. Unlike the *Morris* situation where chapter 7 debtors incur extensive postpetition obligations and then convert their case twice—ending back where they started in chapter 7—these debtors converted only once. *Unlike* Morris where the court held that they had no chance of reorganization, thus making any conversion done in bad faith, the instant debtors were advised to file a chapter 13 reorganization bankruptcy by former counsel. Plainly, former counsel cannot persuasively argue that the chapter 13 case was without any reasonable likelihood of success. Furthermore, it is plausible that the debtors concluded that conversion to a chapter 7 bankruptcy was appropriate when it was clear that the basis given to them for filing for chapter 13 relief—the avoidance of a portion of the second mortgage claim—could not be achieved. Furthermore, the debtors can fairly note that former counsel himself recommended conversion to chapter 7 as a viable course of action once their bifurcation attempt was unsuccessful.

A further distinction from the *Morris* decision is derived from the instruction issued by the Third Circuit Court of Appeals in *In re Lilley,* 91 F.3d at 495. The court there concluded that a debtor does not act in bad faith when filing a chapter 13 petition in order to discharge a debt which would not be dischargeable in a chapter 7 case. *See also Matter of Smith,* 848 F.2d 813, 818 (7th Cir.1988); *Matter of Tobiason,* 185 B.R. 59 (Bankr.D.Neb.1995); *In re Norwood,* 178 B.R. 683, 689 (Bankr.E.D.Pa.1995). The applicant here assumes, without explaining,

that a debtor necessarily acts in bad faith when he or she exercises a non-waiveable statutory right to convert to chapter 7 under section 1307(a), in order to discharge a debt which must be paid in full in a chapter 13 case.

Accordingly, I find that the circumstances in this instance differ significantly from those in *Morris,* where the debtors' actions resulted in a return to chapter 7 to discharge a debt which would not have been dischargeable had they never originally converted their case from chapter 7. Therefore, the applicant here has not demonstrated by "clear evidence," *see In re Brown,* 951 F.2d 564, 572 (3d Cir.1991), that these debtors have acted in bad faith when they converted their case. As a result, no cause exists for relief from the general provisions of section 348(b).

**B.**

Next, Koresko & Associates argues that the Ninth Circuit analysis in *In re Hines,* 147 F.3d 1185 (9th Cir.1998) should be followed. Upon review, I find the conclusions reached by the Ninth Circuit to be inapposite.

The *Hines* case involved a bankruptcy which began as one under chapter 13 and then was converted to chapter 7. Former counsel sought to recover on a claim for services rendered during the chapter 7 period and possibly during the pre-conversion chapter 13 period.[12] The debtor sought a determination that former counsel was violating the bankruptcy stay in doing so.

The *Hines* court felt that the scope of the stay question involved the issue of dischargeability of former counsel's claim. This latter question was viewed as equivalent to the issue whether counsel for a chapter 7 debtor has a dischargeable claim for postpetition services in an unconverted case:

> So the scenario before us presents a different question: whether the postpetition rendition of legal services bargained for pursuant to a prefiling fee agreement entitles [former counsel] to recover the fees for those later services, not from the bank-

---

**12.** It is unclear from the Ninth Circuit's opinion whether the compensation already received by the debtor's former counsel was sufficient to pay for the chapter 13 services in full.

ruptcy estate ... but directly from [the debtor].

*Id.,* at 1189.

In reaching its conclusion, the appellate court treats the claim of former counsel as a prepetition debt under section 348(d) [13] and recognizes that "but for the rule we announce here, would be subject to the automatic stay ... and to discharge under Section 727." *Id.,* at 1188 n. 5.

The Ninth Circuit, in determining that former counsel's claim is not dischargeable, then addresses the question whether an attorney who enters into an agreement with a client for chapter 7 services before the filing of a chapter 7 petition holds a prepetition dischargeable claim—because the services are rendered pursuant to a prepetition contract—or a non-dischargeable postpetition claim—since the services themselves are rendered after the bankruptcy filing. The court fears that the correct answer to this question may be that counsel holds a prepetition, dischargeable claim and that this result would cause the bankruptcy system to "suffer a massive breakdown." *Id.,* at 1191. Such a ruling in the court's view would make it difficult for individuals to engage attorneys for chapter 7 representation. Thus, it holds "essentially [by] a doctrine of necessity ... that all claims for lawyers' compensation stemming from such postpetition services actually provided to the debtor really do not fall within the automatic stay provisions ... or the discharge provisions of Section 727." *Id.,* at 1191.

■ Whether the Ninth Circuit's analysis or conclusions in *Hines* are correct I need not now consider.[14] The policy considerations and statutory analysis to determine whether a claim, as here, consisting entirely of chapter 13 pre-conversion legal services is dischargeable differ markedly from the issue of the dischargeability of post-conversion chapter 7 services, as in *Hines.* Further, the

statutory language of sections 348(b) and 727(b) is clear. When the statutory language is plain, its provisions should be enforced. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)); *accord, e.g., In re Pelkowski,* 990 F.2d 737, 741 (3d Cir.1993) ("In the absence of clearly expressed contrary legislative intent, the statutory language must be regarded as conclusive"); *In re Segal,* 57 F.3d 342, 345 (3d Cir.1995); *Taylor v. Freeland & Kronz,* 938 F.2d 420, 423 (3d Cir.1991), *aff'd,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

## C.

Accordingly, there is no basis to ignore the statutory provisions of the Bankruptcy Code which render the instant claim of former counsel dischargeable, unless the provisions of section 523(a) apply.

On November 30, 1998, after the conclusion of the hearing on the instant application, Koresko & Associates, P.C. filed a complaint asserting that its claim should be determined non-dischargeable by virtue of section 523(a)(2)(A). The debtors have filed an answer in opposition to this complaint, and this proceeding will soon be tried.

Unless this pre-conversion claim is determined to be non-dischargeable under section 523(a), the debtors have no standing to object to the allowance of the claim under section 330(a). (Nor, as mentioned earlier, is there presently any practical reason to allow the claim.) If Koresko & Associates prevails in its adversary proceeding, however, and a de-

---

**13.** The court never addresses whether former counsel holds a claim under section 503(b). In addition, no distinction is made by the court between services rendered before and after the conversion of the case in applying section 348.

**14.** For example, the court acknowledges the possibility that counsel may not hold a prepetition

claim for services rendered after a bankruptcy filing, even if the retention agreement is signed prepetition. *Id.,* at 1191. Furthermore, its policy concerns may be overstated. In this district, most (if not all) chapter 7 practitioners seek a prepetition retainer from their clients equal to their entire fee.

termination is made that its claim is non-dischargeable, the debtors' request that I fix the amount of the claim under section 330(a) would then be justiciable. At that point I would exercise my discretion to fix the claim. *See generally In re McLaren,* 3 F.3d 958, 965–66 (6th Cir.1993); *Matter of Hallahan,* 936 F.2d 1496, 1507–08 (7th Cir.1991).[15] Given the present posture of this bankruptcy case, I cannot do so at this time.

## V.

▇ The last issue to be considered is the debtors' request for relief under 11 U.S.C. § 329(b). Section 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

▇ By virtue of section 329, bankruptcy courts may review the reasonableness of attorney's fees paid by debtors to their counsel.

*Accord, e.g., In re Biggar,* 110 F.3d at 687 ("Section 329(b) provides the court with the authority to evaluate the reasonableness of the fee arrangement.... If the court finds the fee agreement unreasonable or excessive, it may order disgorgement or cancel future payments"). Furthermore, a bankruptcy court can order all or part of a retainer disgorged to the entity that tendered the payment if the value of the retainer paid exceeded the value of the services provided.[16] *See In re Laxague,* 981 F.2d 1258 (Table), *unpublished disposition,* 1992 WL 389251, *2 (9th Cir.1992); *In re NBI, Inc.,* 129 B.R. 212 (Bankr.D.Colo.1991); *In re Creekside Landing Ltd.,* 116 B.R. 106, 107 (Bankr.M.D.Tenn. 1990) ("Section 329(b) and Bankruptcy Rule 2017(a) provide the mechanism for review of prepetition retainers. Challenge to a retainer is by motion. After notice and a hearing, counsel may be required to regurgitate amounts found to be 'excessive' ").

As I mentioned earlier, the debtors paid $1,500.00 to Koresko & Associates *via* retainer prior to the commencement of this case. They now argue that former counsel acted improperly in recommending that they file a chapter 13 case. Further, if a chapter 7 petition had been filed, the debtors contend that the reasonable value of such services would be only $500.00. Based upon this syllogism, the debtors contend that this court should order former counsel to disgorge to the debtors $1,000.00 of the paid retainer.

▇ Disgorgement of a prepetition retainer will be ordered only if retention of the retainer would be unreasonable in light of the services rendered to the debtor. *See, e.g., In re Emco Enterprises,* 94 B.R. 184, 187 (Bankr.E.D.Cal.1988) ("There being no excessive prepetition compensation, there is no basis under 11 U.S.C. § 329 for requiring return of the payments"). Here, the evidence demonstrates that the $1,500.00 pay-

---

15. The parties may elect to incorporate all or part of the evidentiary record made in this contested matter into that proceeding. To the extent they wish to incorporate any testimony, a copy of the transcript would be needed.

16. Since any claim of former counsel in excess of the retainer received would be discharged in this chapter 7 case (unless section 523(a) applies),

there is no need for me to consider the reasonableness of the non-retainer portion of the request. *Accord In re Symes,* 174 B.R. 114, 118 (Bankr.D.Ariz.1994) ("... if a pre-petition Chapter 7 retainer agreement is dischargeable, there is no need to review it under the cancellation provisions of section 329(b)").

ment was reasonable compensation for the services rendered to the debtors in their unsuccessful chapter 13 case.

■ First, I reject the debtors' contention that it was improper for former counsel to recommend to them a chapter 13 filing when they sought his services in filing a chapter 7 petition. Their argument overlooks P.L. No. 98–353, section 322, enacted in 1984, and which amended Official Bankruptcy Form No. 1—the Bankruptcy Petition to require that a bankruptcy attorney discuss with all debtors their various filing options under chapters 7 and 13. Section 322 states:

> SEC. 322. Official Bankruptcy Form No. 1, referred to in Rule 1002 of the Bankruptcy Rules, "11 USC app" is amended—
> (1) by inserting after paragraph (5) the following:
> (6) (If petitioner is an individual whose debts are primarily consumer debts.) Petition is aware that (he or she) may proceed under chapter 7 or 13 of title 11, United States Code, "11 USC 701 et seq., 1301 et seq." understands the relief available under each such chapter, and chooses to proceed under chapter 7 of such title.
> (7) (If petitioner is an individual whose debts are primarily consumer debts and such petitioner is represented by an attorney.) A declaration or an affidavit in the form of Exhibit 'B' . . .
>
> *   *   *   *   *   *
>
> I, . . ., the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that (he or she) may proceed under chapter 7 or 13 of title 11, United States Code, and have explained the relief available under each such chapter. Executed on . . . "Signature . . . Attorney for Petitioner".

Therefore, it was incumbent upon former counsel to discuss with these debtors the potential benefits of a chapter 13 petition, as well as those of chapter 7.

In addition, although former counsel did not prevail in bifurcating the secured claim of the second mortgagee, the position asserted by their attorney, albeit a minority position, was not frivolous. Some decisions contain language in support of debtors' bifurcation argument. *See, e.g., In re Jackson,* 136 B.R. 797 (Bankr.N.D.Ill.1992); *In re Hirsch,* 155 B.R. 688 (Bankr.E.D.Pa.1993), *rev'd on other gnds,* 166 B.R. 248 (E.D.Pa.1994); *In re Klein,* 106 B.R. 396, 400 (Bankr.E.D.Pa.1989) (dicta). Indeed, one bankruptcy judge from Pennsylvania initially agreed with the debtors' interpretation of section 1322(b)(2), *See In re Tallo,* 168 B.R. 573 (Bankr.M.D.Pa. 1994), although he later retreated from his holding. *In re Anderson,* 209 B.R. 639 (Bankr.M.D.Pa.1997).

The evidence is also clear that the ultimate decision to file a chapter 13 petition was made by the debtors. Ex. A–7. This decision was made knowing that the basic fee charge for the chapter 13 filing would be $1,500.00, which is a reasonable fee for such services. *See, e.g., In re Breeden,* 180 B.R. 802, 813 (Bankr.N.D.W.Va.1995) ("[t]he fee customarily charged by attorneys regularly practicing before it for a [similar Chapter 13] case . . . ranges from $800 to $1,500"); *In re McClanahan,* 137 B.R. 73, 77–78 (Bankr.M.D.Fla. 1992); *see also* Local Bankr.R.2016–2 (bankruptcy counsel in a chapter 13 case who seeks compensation of $1,500.00 or less may file a simplified fee request) (effective Feb. 1, 1999).

Finally, my review of the evidence presented, and my knowledge of the quality of the representation provided to the debtors, convinces me that they received representation from former counsel which was worth at least $1,500.00. Even if I assume, *arguendo,* that the debtors did not receive an accurate assessment from former counsel about their chances of prevailing under section 506(d) in objecting to the claim of the second mortgagee—Mrs. Toms testified that she was assured of success—the non-frivolous nature of the position, coupled with the quality of the representation and potential benefit which would inure to these debtors if they could bifurcate that secured claim justified the additional $750.00 in retainer charged by counsel.

Accordingly, the debtors' request to order a $1,000.00 disgorgement of their prepetition payment to former bankruptcy counsel must be denied.

### ORDER

AND NOW, this 25th day of January, 1999, upon application of Koresko & Associates, P.C. for an award under 11 U.S.C. § 330(a) and upon consideration of the debtors' objection thereto and request for relief under section 329(b),

And for the reasons stated in the accompanying memorandum,

It is hereby ordered that:

1. The debtors' request for relief under section 329(b) is denied. Koresko & Associates, P.C. need not disgorge the prepetition retainer it received;

2. Unless the claim of Koresko & Associates, P.C. is determined non-dischargeable under section 523(a), the debtors have no standing to object to its fee application; and

3. There is no purpose to fixing any award in favor of Koresko & Associates under section 330(a) in this no-asset chapter 7 case as any such award (to the extent not already paid) would be discharged, unless the claim is later found to be non-dischargeable, or unless the trustee notifies the court that there are assets to be distributed to claimants.